TECHNOMARINE SA, Plaintiff–Appellant,

v.

GIFTPORTS, INC., a New York Corporation, Defendant–Appellee,

Does 1 through 10, Defendants.

No. 12–4174–cv.

United States Court of Appeals, Second Circuit.

Argued: Dec. 4, 2013.

Decided: July 15, 2014.

Brent Herbert Blakely, Blakely Law Group, Hollywood, CA, for Plaintiff–Appellant.

William Thomashower (Rachel Schwartz, Carla Sereny, on the brief), Schwartz & Thomashower LLP, New York, NY, for Defendant–Appellee.

Before: LIVINGSTON and LOHIER, Circuit Judges, and STEIN, District Judge.[*]

DEBRA ANN LIVINGSTON, Circuit Judge:

We consider whether a prior litigation between the parties resolving claims of trademark infringement and other unfair business practices, and stemming from earlier conduct, bars the present suit of Plaintiff–Appellant TechnoMarine SA ("TechnoMarine" or "Plaintiff") over similar conduct that occurred after the settlement of the earlier suit. The district court (Batts, *J.*) granted a motion to dismiss by Defendant–Appellant Giftports, Inc. ("Giftports" or "Defendant"), holding that TechnoMarine's claims are barred by *res judicata* and, in the alternative, that TechnoMarine has failed to state a claim. The district court denied Plaintiff leave to amend its complaint a second time on the ground that it would be futile in light of the *res judicata* bar. We conclude that *res judicata* does not bar the alleged trademark and other unfair business practice claims that arose *after* the original settlement agreement between the parties. Nonetheless, we affirm the dismissal of the complaint on the basis of the district court's alternate holding that TechnoMarine has failed to state a claim upon which relief may be granted. We also affirm the district court's denial of Plaintiff's request to amend its complaint because Plaintiff has failed to indicate how further amendment would cure its pleading deficiencies.

## BACKGROUND [1]

### A. Parties

TechnoMarine is a Swiss designer, manufacturer, and distributor of watches, and it holds various trademark and copyright registrations for its word mark, logo, and watch dial. TechnoMarine has sold hundreds of millions of dollars of watches globally. TechnoMarine closely controls distribution and sale of its watches through authorized dealer agreements that

---

[1] The factual background presented here is drawn from the allegations of TechnoMarine's First Amended Complaint, which we accept as true for the purposes of our review of a motion to dismiss, *see Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 107 (2d Cir. 2012), and from TechnoMarine's Second Amended Complaint and settlement agreement in *TechnoMarine SA v. Giftports Inc., et al.*, No. 08–Civ–10911 (S.D.N.Y. filed December 20, 2008).

expressly prohibit dealers from transshipping and selling TechnoMarine watches to unauthorized third-party retailers.

Giftports is a New York corporation that sells premium brand watches at discounted prices on the internet. Giftports is not an authorized retailer for TechnoMarine watches but, nonetheless, Giftports has "purchased, advertised, offered for sale, and/or sold watches bearing the TechnoMarine marks on its website."

## B. Prior Litigation and Settlement

In December 2008, TechnoMarine brought a prior suit against Giftports in the District Court for the Southern District of New York (Kaplan, *J.*). In March 2009, TechnoMarine filed a second amended complaint in that case, bringing three causes of action:

1. Copyright infringement under 17 U.S.C. § 101 *et seq.*, based on Giftports's alleged unauthorized use of photographs of TechnoMarine brand watches;

2. Unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), based on allegations that Giftports intended purchasers to believe it was "an authorized source for TechnoMarine watches" and that Giftports was selling TechnoMarine watches "without the benefit of the warranty and after sales service that TechnoMarine provide[s] for such products"; and

3. Alleged interference with TechnoMarine's contractual relations with "authorized retailers and/or distributors."

The parties resolved this earlier case through a "Litigation Settlement Agreement and Mutual Release" ("Settlement Agreement") that was executed on April 24, 2009. Pursuant to the Settlement Agreement, the parties submitted to the district court a stipulation of dismissal with prejudice, which was entered on April 27, 2009.

In the Settlement Agreement, Giftports agreed to pay TechnoMarine $5,000 and TechnoMarine agreed to dismiss the action with prejudice. Giftports represented in the Settlement Agreement that it had "ceased all use of any copies of Plaintiff's Copyrighted Work ... at least as of January 16, 2009."[2] The Settlement Agreement made clear that it should not be construed "as a license, implied or otherwise, by and between Plaintiff and Defendant to use the Copyrighted Work."

Giftports denied any intentional infringement of TechnoMarine's rights in the Settlement Agreement, and the agreement was altogether silent as to whether the conduct alleged by TechnoMarine was unlawful. Neither party admitted liability or wrongdoing. The agreement's release of liability was broad and unqualified, providing that the parties agreed, in pertinent part, to:

> release ... one another ... from any and all liability, ... causes of action, suits or obligations of any nature, ... whether known or unknown, ... which the parties ... now have, may have or may hereafter assert against one another, relating to the claims alleged in the Civil Action or arising from the facts alleged therein....

J.A. 70.

## C. Present Litigation

More than two and a half years after the 2009 settlement, TechnoMarine brought

**2.** "Copyrighted Work" was defined in the agreement to denote "Copyright Registration No. TX 6–857–826 for the 2008 Online TechnoMarine Watch Catalog."

the present action against Giftports.[3] In its First Amended Complaint, filed in April 2012, TechnoMarine asserted six causes of action:

1. Trademark infringement, pursuant to 15 U.S.C. § 1114;

2. False designation of origin, pursuant to 15 U.S.C. § 1125(a);

3. Trademark dilution, pursuant to 15 U.S.C. § 1125(c);

4. Tortious interference with contractual relations;

5. Common law unfair competition; and

6. Copyright infringement, pursuant to 17 U.S.C. § 501.

The conduct alleged to be unlawful, according to TechnoMarine's amended complaint in this case, is similar to the conduct that TechnoMarine alleged to be unlawful in its first, previously settled lawsuit. The gravamen of TechnoMarine's complaint in this case is that Giftports—although not an authorized retailer—purchased and sold watches bearing TechnoMarine marks on its website. The complaint alleges that it is "reasonable to conclude" that these watches are "either counterfeit" or they were "obtained from entities who are [contractually] prohibited from selling" these watches to Giftports. These allegations are, in substance, additional instances of the same type of conduct alleged in the litigation settled in 2009. Nonetheless, the First Amended Complaint in the present case inexplicably fails to mention the previous lawsuit and settlement. Further, it does not distinguish between conduct that occurred prior to, as compared to following, the previous litigation between the parties.

Giftports moved in the district court to dismiss TechnoMarine's First Amended Complaint in May 2012. TechnoMarine opposed the motion; additionally, it requested leave to amend "[i]n the event [the district court found] that Plaintiff's allegations are insufficient to sustain any of its claims." In September 2012, the district court granted the motion to dismiss, holding that Plaintiff's claims are barred by *res judicata* due to TechnoMarine's 2009 lawsuit and settlement. It alternatively held, under Rule 12(b)(6), that TechnoMarine failed to state a valid cause of action for any of its claims. The district court also denied Plaintiff's request for leave to amend its complaint a second time, ruling that any amendment would be futile in light of the district court's *res judicata* holding. Judgment was entered on September 18, 2012, and TechnoMarine filed this timely appeal.

## DISCUSSION

We review *de novo* the dismissal of a complaint under Rule 12(b)(6), accepting all allegations in the complaint as true and drawing all inferences in favor of the plaintiff. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir.2013). Our review of a district court's application of *res judicata* is also *de novo*. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir.2010). A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice. *See, e.g., Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.1992) ("[W]hen all relevant facts are shown by the court's own records, of which

---

**3.** TechnoMarine filed its initial complaint in this second action on December 28, 2011. On March 28, 2012, Giftports moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Rather than responding to this motion to dismiss, TechnoMarine filed an amended complaint, dated April 19, 2012.

the court takes notice, the defense [of *res judicata*] may be upheld on a Rule 12(b)(6) motion without requiring an answer.").

## I.

"Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir.2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)) (brackets and internal quotation marks omitted). "To prove the affirmative defense [of *res judicata*] a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir.2000).

The first two elements of this test are satisfied and are not in dispute here.[4] The only issue in this appeal is the third element—whether "the claims asserted" in this action "were, or could have been, raised in the prior action." *Monahan*, 214 F.3d at 285. Whether a claim that was not raised in the previous action could have been raised therein "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir.1992) (internal quotation marks omitted). To determine wheth-

er two actions arise from the same transaction or claim, we consider "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir.2001) (internal quotation marks omitted).

When analyzing whether a claim is based on the same transaction or occurrence, courts must be mindful that a claim "arising subsequent to a prior action ... [is] not barred by *res judicata*" even if the new claim is "premised on facts representing a continuance of the same 'course of conduct.'" *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir.2003). This is because, as the Supreme Court has directed:

> That both suits involved 'essentially the same course of wrongful conduct' is not decisive. Such a course of conduct ... may frequently give rise to more than a single cause of action.... While the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.

*Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327–28, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

We have explained that this "unremarkable principle" can be complicated by the "at-times-difficult determination of what degree of conduct" following the first judgment is necessary to give rise to a new "claim." *Storey*, 347 F.3d at 383. As relevant here, our precedent provides two cat-

---

4. The earlier litigation was between the same two parties and was resolved in 2009 by a settlement agreement, which is generally considered a judgment on the merits. *See Greenberg v. Bd. of Governors of the Fed. Reserve Sys.*, 968 F.2d 164, 168–70 (2d Cir.1992).

egories of cases where post-judgment conduct constitutes a new claim falling outside the parameters of claim preclusion.

The first category is straightforward: when post-judgment conduct is sufficient to state a cause of action on its own—without the need to incorporate facts that preceded the first suit—the later course of conduct underlying the second suit gives rise to a new cause of action that is not barred by *res judicata*. *See Storey*, 347 F.3d at 384 ("Where the facts that have accumulated after the first action are enough on their own to sustain the second action, the new facts clearly constitute a new 'claim,' and the second action is not barred by *res judicata*.").

We have, therefore, held that a settlement for fraud in the sale of securities from 1975 to 1979 "is not the same as the claim that [the defendant] defrauded customers in the sale, purchase, and repurchase of other securities" in later years. *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir.1996). Similarly, we have held that suits over later breaches of contract, financial transactions, and ship voyages are not barred by claim preclusion, even if the plaintiffs previously brought suit over earlier instances of this same conduct. *See Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir.1990) (prior action did not preclude later suit regarding breaches of contract that occurred subsequent to the filing of a prior suit); *see also Greenberg*, 968 F.2d at 168–70 (prior actions regarding earlier financial transactions did not preclude later suit over later financial transactions); *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90–91 (2d Cir.1997) (prior suit regarding pilots' fees in previous voyages did not preclude a subsequent suit regarding pilots' rights in ocean voyages occurring after those underlying the first suit).

"Claims arising subsequent to a prior action," based on conduct occurring after the commencement of the earlier suit, and sufficient to state a cause of action without the need to incorporate facts preceding the first suit "need not, and often perhaps could not, have been brought in that prior action," and so are not barred by *res judicata* "regardless of whether they are premised on facts representing a continuance of the same 'course of conduct.'" *Storey*, 347 F.3d at 383.[5] To be clear, when a defendant commits re-

---

5. Our decision in *Berlitz Schools of Languages of America, Inc. v. Everest House*, 619 F.2d 211 (2d Cir.1980), is not to the contrary. There, in a dispute between the Berlitz Schools of Languages and Charles Berlitz, a grandson of the Schools' founder, the plaintiffs obtained a state court judgment against Charles Berlitz and the other defendants declaring that the defendants could not use the name Berlitz as part of the name of a foreign language teaching text or as part of the name of a publishing company preparing foreign language materials, but that Charles Berlitz could identify himself as the editor or author of foreign language materials, so long as he made it clear that he was not connected with plaintiffs. *Id.* at 213. In a subsequent suit, the state court rejected the plaintiffs' claim that Charles Berlitz had violated the declaratory judgment when he listed himself as an author of a foreign language textbook and included the disclaimer that "[s]ince 1967, Mr. Berlitz has not been connected with the Berlitz Schools in any way." *Id.* at 214. This Court determined, in a subsequent litigation involving another set of instructional books with a substantially identical use of the Berlitz name and disclaimer, that the district court had properly granted summary judgment. *Id.* at 215. Although we cited both *res judicata* and collateral estoppel principles, our decision, properly read, rested on collateral estoppel: that given the "minuscule" differences between "the legend of Charles Berlitz's name and the disclaimer" on the new series as opposed to the legend and disclaimer on the preceding one, "there [were] no issues with respect to plaintiffs' [federal] claims which ha[d] not been determined" in the earlier state proceedings. *Id.* at 215–16.

peated acts, each of which can independently support a cause of action, claim preclusion principles *will* require plaintiffs seeking relief as to all of the defendant's conduct to bring together the causes of action that have already arisen when the litigation commences, provided that such acts are based on the same connected series of transactions. Thus, if a party sues for a breach of contract, "*res judicata* will preclude the party's subsequent suit for any claim of breach that had occurred *prior* to the first suit." *Prime Mgmt.*, 904 F.2d at 816 (emphasis added). *Res judicata* will not, however, "bar a subsequent suit for any breach that had not occurred when the first suit was brought." *Id.; see also* Restatement (Second) of Judgments § 24 cmt. d (1982) ("When a person trespasses daily upon the land of another for a week, although the owner of the land might have maintained an action each day, such a series of trespasses is considered a unit up to the time when action is brought. Thus if in the case stated the landowner were to bring suit on January 15, including in his action only the trespass on January 10, and obtain a judgment, he could not later maintain an action for the trespasses on January 11 through January 15."). "If a defendant engages in actionable conduct after a lawsuit is commenced, the plaintiff may seek leave to file a supplemental pleading [under Rule 15(c)] to assert a claim based on the subsequent conduct." *First Jersey Sec.*, 101 F.3d at 1464. But the plaintiff "is not required to do so, and his election not to do so is not penalized by application of res judicata to bar a later suit on that subsequent conduct." *Id.*

▇ That brings us to the second type of case in which we have analyzed whether conduct relating to but occurring after commencement of an earlier litigation gives rise to a new claim so as to fall outside the parameters of *res judicata*. When a subsequent action involves a claim over "ongoing conduct" and it relies on facts that occurred both before and after the earlier action commenced, claim preclusion will not bar a suit, we have said, "based upon legally significant acts occurring *after* the filing of a prior suit that was itself based upon earlier acts." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir.2000). Our case law provides guidance as to what acts are "legally significant."

In *Waldman*, the plaintiff, in his earlier action ("*Waldman I*"), sued the Village of Kiryas Joel, New York, for discriminatory enforcement of the zoning code and constitutional violations related to the provision of public housing.[6] *Id.* at 107. In the plaintiff's later action, in which he accused the Village of "excessive entanglement with religion" and argued that "the Village government is little more than an extension of the Congregation Yetev Lev ...," the dominant religious body in the Village," Waldman sought dissolution of the Village under the Establishment Clause. *Id.* at 107–08. Waldman's later suit (brought only a few months after the settlement in *Waldman I*) relied on allegations of conduct taking place *before* the earlier action was commenced, in addition to some new post-settlement conduct.

As we have said, "claim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim." *Storey*, 347 F.3d at 384. In *Waldman*, we determined that:

> it is simply not plausible to characterize Waldman's claim as one based in any

---

6. In fact, two prior related suits had been filed against the Village. Because Waldman was not a plaintiff in the first action, the *Waldman* Court referred to the second of these suits as "*Waldman I*." The two earlier actions in *Waldman* were settled jointly.

significant way upon the post-*Waldman I* facts. The new allegations made in the present complaint do not, either by themselves or to any degree not already demonstrated by the overlapping facts, establish the sort of pervasive and otherwise irremediable entanglement between church and state that would justify a drastic remedy like the dissolution of the Village. . . . We conclude that, in seeking the dissolution of [the Village], Waldman has based his action principally upon the common nucleus of operative facts shared with *Waldman I.*

*Waldman,* 207 F.3d at 113. Accordingly, we held that the facts post-dating the first action did "not create a 'new' cause of action that did not exist when the prior suits were brought" and that Waldman's Establishment Clause claim was barred by *res judicata. Id.* at 112. We expressly noted, however, that this was not to hold "that a series of future actions evincing an enduring and all-encompassing domination of the Village government by the Congregation could not at some point suffice to create a *new* cause of action for the dissolution of the Village." *Id.* at 113. "[A]t some point," as we said, "repetition of the same or similar acts" may result in a later claim, "based, as it would be, primarily upon a cumulation of events occurring after the first suit." *Id.* at 114. But Waldman could not "use the mere inclusion of a few post-*Waldman I* Village acts . . . to resurrect a claim, grounded almost entirely upon . . . events [preceding the prior litigation]." *Id.*

## II.

Applying the framework that these cases establish, we conclude that the district court erred in its application of claim preclusion principles. Little aided by TechnoMarine's inartful complaint (which fails to allege when particular conduct occurred or to differentiate between pre- and post-settlement conduct), the district court failed to consider whether TechnoMarine alleges *new* conduct occurring after the settlement that is sufficient to state one or more new causes of action.[7] Because we conclude that at least as to its trademark infringement claim, TechnoMarine's complaint is properly read at this stage of the litigation to assert liability based on *new,* post-settlement conduct, this claim, and perhaps others, are "not barred by *res judicata* " even though "premised on facts representing a continuance of the same 'course of conduct.' " *Storey,* 347 F.3d at 383.

TechnoMarine's trademark infringement claim is not barred by claim preclusion because Giftports allegedly committed new instances of trademark infringement after the settlement, so that the present claim, to the extent based on the new acts of infringement, was not and could not have been litigated in the earlier proceeding. As noted in the district court's opinion, TechnoMarine, in its opposition to Giftports's motion to dismiss, argued that the present action "involves infringements on [its] 2010/2011 line of watches." Although the complaint does not provide dates for the allegedly infringing conduct, drawing

---

**7.** As we have said, the *res judicata* bar is normally inoperative with regard to the defendant's actionable conduct occurring after an earlier suit *commences,* provided that the plaintiff does not act to bring post-commencement claims within the scope of his earlier suit. *See First Jersey Sec.,* 101 F.3d at 1464. Here, however, the parties' Settlement Agreement brings within its ambit (and thus the ambit of the first litigation) claims existing as of the date of settlement and arising from the facts alleged in the original complaint. *See Greenberg,* 968 F.2d at 169 (noting that a settlement agreement "can only have the preclusive [e]ffect that the parties to the settlement intended to give it"). Thus, the operative date for *res judicata* purposes is the date of the settlement.

all inferences in TechnoMarine's favor, as we must do on review of a motion to dismiss, the complaint is fairly read to allege a course of conduct by Giftports that was ongoing as of April 19, 2012, the date of the complaint. Because TechnoMarine's complaint alleges supposedly unlawful conduct involving the 2010/2011 line of watches, which would have occurred after the 2009 settlement and judgment, TechnoMarine can support a claim for trademark infringement of the 2010/2011 line of watches based on the new allegedly infringing conduct. As a result, this cause of action is not barred by claim preclusion.[8]

The district court's misapplication of claim preclusion principles may have resulted from a misreading of our decision in *Waldman*. There, we noted in passing that the plaintiff in that case asserted "nothing more than additional instances of what was previously asserted." *TechnoMarine S.A. v. Giftports, Inc.*, No. 11 Civ. 9643(DAB), 2012 WL 3964734, at *5 (S.D.N.Y. Sept. 10, 2012) (citing *Waldman*, 207 F.3d at 113); *see also Marcel Fashions Grp. Inc. v. Lucky Brand Dungarees, Inc.*, No. 11 Civ. 5523(LTS), 2012 WL 4450992, at *4 (S.D.N.Y. Sept. 25, 2012) (citing *Waldman*, 207 F.3d at 113). But *Waldman* did not hold that claims that are based on conduct that takes place after an earlier litigation are barred by *res judicata* simply because the conduct is similar to prior acts that took place before the earlier

litigation. Our precedent makes clear that if the later conduct can support a cause of action on its own, it is the basis of a new cause of action not precluded by the earlier judgment.

The contrary conclusion—that a plaintiff such as TechnoMarine *is* precluded from bringing suit for alleged *new* trademark violations because the parties previously settled a suit over earlier, similar conduct—violates basic claim preclusion principles. A simple hypothetical may help explain this point. Assume that a plaintiff sues a defendant for trademark infringement occurring from 2010 to 2012. After trial, the court grants the plaintiff judgment and money damages. Two years following this judgment, in 2014, the defendant again infringes upon the same trademark, and in a similar way. Under Giftports's reasoning, claim preclusion would prohibit the plaintiff from suing again. The earlier judgment against the defendant—determining that it violated plaintiff's trademark rights from 2010 to 2012— would in effect immunize the defendant against all suits concerning infringements of the same trademark in a similar way. This is not the law of claim preclusion.

Giftports nonetheless asserts that TechnoMarine's claims should be precluded here for two reasons. First, Giftports argues that the Settlement Agreement between the parties prohibits this suit. Second, Giftports posits that TechnoMarine's

---

**8.** Any claim for trademark infringement occurring *before* the settlement of the 2009 litigation, however, is barred by *res judicata* because it either was or could have been brought in the first litigation. But the fact that the complaint includes allegations of prejudgment conduct, which are barred, does not mean the allegations of post-judgment infringing conduct are also barred. As for TechnoMarine's causes of action for trademark dilution, false designation of origin, tortious interference, and unfair competition,

these causes of action, too, are not precluded if based on either: (1) new facts sufficient to state a claim on their own without the need to incorporate facts that preceded the first suit; or (2) "legally significant acts" such that the later claim represents a new cause of action, even if based to some degree on earlier conduct. Given our conclusion, *infra*, that the complaint was properly dismissed on alternative grounds, we need not decide whether these claims are barred.

request for, and failure to obtain, an injunction has preclusive effect. Neither argument is persuasive.

■ First, the prior settlement between the parties does not preclude this suit. A settlement, just like a judgment, does not ordinarily bar claims that have not yet accrued. The parties could *agree* to extinguish future claims, but TechnoMarine and Giftports did no such thing here. They agreed only to release liability "relating to the claims alleged in the Civil Action or arising from the facts alleged therein." The stipulation of dismissal in this case, moreover, made clear that it did not extinguish claims that did not yet exist. J.A. 75, 187 ("[A]ll claims that were or could have been asserted [in this action] shall be dismissed with prejudice...."). The Settlement Agreement is silent as to future conduct by either party that may violate the same statutory or common law rights. But it does make clear that it is not a license for Giftports to use TechnoMarine's intellectual property in the future.

■ Giftports's second argument—that TechnoMarine should be precluded from suing over future conduct because it failed to obtain an injunction prohibiting this future conduct—is also unavailing. Courts may deny requests for injunctive relief, an equitable remedy, for various reasons unrelated to the validity of the plaintiff's claim. For example, a request for an injunction will be denied when remedies available at law, such as monetary damages, are adequate to compensate for the injury, or the public interest would be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). A district court may deny injunctive relief, moreover, when there is

little evidence of likelihood of future violations. *Cf. SEC v. Manor Nursing Ctrs., Inc.,* 458 F.2d 1082, 1100 (2d Cir.1972) (noting, in the context of securities violations, that "[t]he critical question for a district court in deciding whether to issue a permanent injunction ... is whether there is a reasonable likelihood that the wrong will be repeated").[9] As a result, the failure of a plaintiff to obtain (or even seek) an injunction does not preclude it from bringing suit for *later* instances of similar unlawful conduct.

Finally, we reject Giftports's policy argument—that if we decline to find claim preclusion here, we will encourage seriatim lawsuits. A putative defendant is protected from seriatim lawsuits through the ordinary operation of claim preclusion, issue preclusion, and settlement. First, claim preclusion principles incentivized TechnoMarine to bring all of its causes of action involving the same transaction or connected series of transactions and arising *before* commencement of its first litigation in that first suit, and prohibited it from splitting these causes of action into multiple suits. But TechnoMarine did not bring suit, and could not have done so, for causes of action that had not yet arisen. Second, if Giftports had litigated the previous action until final judgment and obtained a favorable determination regarding the legality of its conduct, absent a crucial intervening change of circumstances, issue preclusion would have precluded TechnoMarine from litigating again the issue of whether Giftports's course of conduct was lawful. Similarly, in the Settlement Agreement resolving the first litigation, Giftports could have expressly resolved claims over future conduct. Our decision today thus in no way opens the door to seriatim lawsuits. We merely hold, in accordance with well-set-

**9.** A plaintiff may also elect not to seek an injunction because he reasonably assumes the defendant will comply with the law going forward.

tled precedent, that TechnoMarine's earlier settlement does not preclude it from bringing later claims over new conduct giving rise to causes of action that did not exist at the time of the settlement.

### III.

We next address the district court's alternative holding that TechnoMarine failed to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (brackets, citations, and internal quotation marks omitted).

■ The district court reviewed each of Plaintiff's claims and the facts alleged in its complaint and determined that TechnoMarine failed plausibly to plead its claims for trademark infringement, false designation of origin, trademark dilution, tortious interference, unfair competition, or copyright infringement. We have undertaken an independent review, and find no error in the district court's analysis. TechnoMarine's complaint did not permit the district court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, and accordingly, Plaintiff has not raised its "right to relief above the speculative level," *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. We therefore affirm the district court's dismissal of plaintiff's

First Amended Complaint for failure to state a claim.

■ TechnoMarine argues, finally, that the district court's denial of its request for leave to amend its complaint should be reversed. The district court denied plaintiff leave to amend on the grounds that curing its substantive pleading deficiencies would be futile in light of the *res judicata* bar. As we have made clear, *res judicata* does not bar (at a minimum) TechnoMarine's trademark infringement claim. We nonetheless affirm the district court's denial of leave to amend because TechnoMarine has not indicated how it could cure its pleading deficiencies.

■ Under Rule 15(a), "leave to amend 'shall be freely given when justice so requires.'" *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed.R.Civ.P. 15(a)). "We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, ... in which case we review the legal conclusion *de novo.*" *Panther Partners Inc. v. Ikanos Commc'ns, Inc.,* 681 F.3d 114, 119 (2d Cir.2012). Leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy,* 482 F.3d at 200 (citing *Foman v. Davis,* 371 U.S.178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

■ A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint. *See, e.g., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 188 n. 71 (2d Cir.2014) (denying leave to amend where "plaintiffs have identified no additional facts or legal theories—either on appeal or to the District Court—they

might assert if given leave to amend"); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir.2006) (per curiam) ("A counseled plaintiff is not necessarily entitled to a remand for repleading whenever he has indicated a desire to amend his complaint, notwithstanding the failure … to make a showing that the complaint's defects can be cured."); *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53–54 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."). Moreover, even where a legal error undergirds a district court's decision to deny leave to amend, this Court can affirm the denial of leave on alternate grounds. *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 491 (2d Cir.2011) (affirming despite the fact that the court could not "affirm the denial of Plaintiffs' motion to amend on the futility ground cited by the district court," because amendment would be futile for other reasons); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726–27 (2d Cir.2010).

Here, Plaintiff already amended its complaint once following Defendant's first motion to dismiss for failure to state a claim. TechnoMarine failed to resolve its pleading deficiencies in its First Amended Complaint. In its request to amend this complaint below and in its brief here, moreover, TechnoMarine has entirely failed to specify how it could cure its pleading deficiencies. We therefore affirm the district court's denial of Plaintiff's request further to amend the complaint and its decision to grant the motion to dismiss with prejudice. *See Porat*, 464 F.3d at 276.

## CONCLUSION

To summarize: TechnoMarine's complaint, contrary to the district court's de-termination, is not barred *in toto* by claim preclusion. We nonetheless affirm the district court's grant of Giftports's motion to dismiss based on the district court's alternative holding that the complaint fails to state a claim upon which relief may be granted. As for TechnoMarine's request to amend, although amendment would not be futile on claim preclusion grounds, TechnoMarine failed both in the district court and on appeal to specify how a second amendment would allow it to cure its pleading deficiencies. Accordingly, we affirm the district court's denial of TechnoMarine's request for leave to amend.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.