17-3982-cv
*International Leisure Products v. FUNBOY LLC*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of September, two thousand eighteen.

PRESENT:
> GERARD E. LYNCH,
> SUSAN L. CARNEY,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges.*

_____

INTERNATIONAL LEISURE PRODUCTS, INC.,

> *Plaintiff-Appellant,*

> v.                                                                No. 17-3982-cv

FUNBOY LLC,

> *Defendant-Appellee.*

_____

FOR APPELLANT:          BRIAN L. WAMSLEY, Ware, Fressola, Maguire & Barber LLP, Monroe, CT.

FOR APPELLEE:          RICHARD S. MILLS, McElroy, Deutsch, Mulvaney & Carpenter, LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Feuerstein, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on November 14, 2017, is **AFFIRMED**.

Plaintiff-appellant International Leisure Products, Inc. ("ILP") appeals from a judgment entered in the United States District Court for the Eastern District of New York (Feuerstein, *J.*), dismissing under Federal Rule of Civil Procedure 12(b)(6) ILP's claims against defendant-appellee FUNBOY LLC ("Funboy") for, *inter alia*, trade dress infringement and unjust enrichment. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

ILP alleges that, since 2007, it has manufactured and sold large inflatable pool toys shaped like swans, flamingoes, and other birds, under the brand name GIANT SWAN™. ILP has invested more than $1 million in promoting its inflatable swan pool toy, as part of a product line that currently generates approximately $6 million in sales each year. Funboy, too, manufactures and sells an inflatable swan-shaped pool toy, as well as floats shaped like flamingoes and flying horses. According to ILP, Funboy's swan toy closely resembles ILP's. While concededly holding no registered trademark in its GIANT SWAN™ design, ILP asserts that Funboy has impermissibly infringed on ILP's protectable trade dress in this product.[1] The claimed trade dress consists of the "composite arrangement" of the following seven elements, as described by ILP:

---

[1] It is unclear from the second amended complaint whether ILP intends to assert trade dress claims solely with regard to the swan-shaped pool floats, or also regarding its entire product line of pool floats that share similar structural features. *Compare, e.g.*, Joint App'x 14 ¶ 26 ("Funboy's inflatable *swan pool toy products* infringe the GIANT SWAN™ Trade Dress in at least as much as they feature a *swan design* incorporating" the seven asserted trade dress elements. (emphases added)), *with id.* 15 ¶ 28 ("Funboy's inflatable swan *and other inflatable pool toy products* infringe ILP's exclusive rights in its GIANT SWAN™ Trade Dress." (emphasis added)). At oral argument, however, ILP disclaimed any intent to assert a protected trade dress in the product line.

a. the circular or elliptical periphery and recessed interior configuration of the inflatable base with a height in proportion to the circumference of the base to provide a pleasing appearance;

b. the substantially vertical inclination and straight line of the "neck" portion projecting from the periphery of the base, the neck having a particular thickness and height to be in aesthetic proportion to the base;

c. the stylized depiction of the head including the face of a bird, possibly resembling a swan, wherein the stylized countenance has two eyes each having a dark periphery and a light or white center, and a bill or beak surrounded by a shaped border that merges with the periphery of the eyes;

d. the elongated tubular shape of the stylized appendages located on opposite sides of the base, with a height and thickness in aesthetic proportion to the base and optional horizontal arcing lines, the stylized appendages being instead of a bird's wings and also optionally having a generally conical upwardly inclined protuberance;

e. the conical shape of the tail, and the substantially upward inclination of that conical shape from the periphery of the base at the end opposite that from which extends from the neck;

f. a signature color scheme with white, black, gold or pink coloration of the body, orange coloration of the bill/beak and the described coloration of other facial features; and

g. an overall smooth and flexible texture.

Joint App'x 10–11.

In its second amended complaint, filed in February 2017, ILP asserts seven causes of action against Funboy: four claims under section 43 of the federal Lanham Act, 15 U.S.C. § 1125 (for trade dress infringement, false designation of origin, unfair competition, and trademark dilution); and three claims under New York State law (for trademark infringement, trademark dilution, and unjust enrichment). In an order dated November 9, 2017, the District Court dismissed all of ILP's claims with prejudice under Rule 12(b)(6) after concluding that, in its second amended complaint, ILP failed adequately to allege a protectable trade dress in its GIANT SWAN™ inflatable pool toys. We review the District

3

Court's dismissal de novo, taking as true the allegations in ILP's second amended complaint and drawing all reasonable inferences in ILP's favor. *Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. 2018).

Federal trademark law protects recognizable trademarks, with the goal of benefiting both consumers (who rely on trademarks as a signifier of source and quality) and trademark owners (who have a right to protect and profit from their reputation in the market). *See Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215–16 (2d Cir. 2012). Trademark protection may apply not only to words or symbols, *see* 15 U.S.C. § 1127, but also to "trade dress," a concept that "encompasses the overall design and appearance that make the product identifiable to consumers," *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001). We "exercise particular caution when extending protection to product designs" in this way. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) (internal quotation marks omitted). Unlike patent and copyright law, which "bestow limited periods of protection," trademark protection is open-ended. *Id.* at 115. It is "not intended to protect innovation by giving the innovator a monopoly over a useful product feature." *Christian Louboutin*, 696 F.3d at 216 (emphases, alterations, and internal quotation marks omitted).

A plaintiff who asserts a trademark claim bears the burden of, *inter alia*, establishing a protectable trademark. *See id.* "[F]or a trademark to be protectable, the mark must be 'distinctive' and not 'generic.'" *Id.* Trade dress law does not protect "an idea, a concept, or a generalized type of appearance." *Yurman*, 262 F.3d at 115 (internal quotation marks omitted).

Here, we agree with the District Court's conclusion that ILP has failed to allege a distinct, non-generic trade dress in its GIANT SWAN™ pool floats. Notably, several of ILP's asserted trade dress elements contain subjective descriptors like a "pleasing appearance" or an "aesthetic proportion." We have refused protection where, as here, a claimed trade dress lacked sufficiently objective identifiers. *See Yurman*, 262 F.3d at 117 (rejecting claimed trade dress consisting of an "artistic combination of cable jewelry with other elements," noting that "the word 'artistic' simply begs a question" (alteration omitted)).

4

In addition, some of the alleged trade dress elements contain "optional" or alternative features. The lack of objective metrics, combined with the multiplicity of possible combinations of optional features, makes it difficult to discern in ILP's description a single distinctive look. *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) (Courts cannot "shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection.").

In an attempt to shore up the weaknesses of its written description, ILP points to the photograph in its complaint and argues that it may define its trade dress in a "conjoint presentation of textual description and image." Appellant's Br. 31. We explained in *Yurman*, however, that a visual representation of the asserted trade dress does not excuse "the party seeking protection" from its burden of "point[ing] to the elements and features that *distinguish* its trade dress." 262 F.3d at 117 (emphasis added).

In our view, a swan-shaped pool float represents the type of design choice that is "almost invariably" intended "to render the product itself more useful or more appealing" rather than to "identify the [product's] *source*." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000) (emphasis added) (discussing "a cocktail shaker shaped like a penguin").[2] Source identification, though, is the key consideration for trademark law's twin goals of protecting consumers from confusion and protecting manufacturers from unfair competition. *See id.* at 211–13. ILP appears to be seeking protection for a trade dress that would encompass any bird-shaped pool float with even a passing resemblance to ILP's GIANT SWAN™. We therefore conclude that ILP's claimed trade dress is impermissibly overbroad, and that, as a result, it has failed to state a claim for trade dress infringement under the Lanham Act. *See Yurman*, 262 F.3d at 115 (defining a "generic" trade dress as one

---

[2] The *Samara* Court held that an unregistered design-based trade dress cannot be *inherently* distinctive, and that a plaintiff seeking to protect such a trademark must establish distinctiveness based on an acquired secondary meaning. *See* 529 U.S. at 216. In this case, we need not reach the issue of acquired secondary meaning in light of our conclusion that ILP's claimed trade dress is impermissibly generic. *Yurman*, 262 F.3d at 115 ("[E]ven a showing of secondary meaning is insufficient to protect product designs that are overbroad or generic." (internal quotation marks omitted)).

that "refer[s] to the genus of which the [plaintiff's] particular product is a species"). ILP does not dispute the District Court's determination that, absent a protectable trade dress, ILP cannot assert a valid claim under federal or state law for trademark infringement, false designation of origin, unfair competition, or trademark dilution. We accordingly affirm the District Court's dismissal of those claims.

Independent of its trademark claims, ILP challenges the dismissal of its claim for unjust enrichment. To state such a claim, however, ILP must allege that Funboy obtained some unfair benefit. *See Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff." (internal quotation marks omitted)). If ILP has no protectable trade dress in its GIANT SWAN™ product, then ILP's allegations of wrongdoing describe nothing more than fair competition in the market for large, inflatable, animal-shaped pool toys, an inadequate basis for a claim of unjust enrichment. We accordingly affirm the District Court's dismissal of this claim as well.

Finally, ILP argues that the District Court erred in dismissing its second amended complaint with prejudice. We review that action for abuse of discretion. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Here, ILP amended its pleading once as of right before effectuating service, and a second time after receiving notice of Funboy's anticipated motion to dismiss. ILP did not seek leave from the District Court to file a third amended complaint, either in its opposition to Funboy's motion to dismiss, or after the District Court granted Funboy's motion. Moreover, ILP does not, in its appellate brief, "specify how it could cure its pleading deficiencies" if leave were granted to further amend its complaint. *Id.* at 506. We therefore find no abuse of discretion in the District Court's decision to enter a judgment against ILP of dismissal with prejudice.

\* \* \*

6

We have considered ILP's remaining arguments and find them to be without merit. For the reasons set forth above, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court