24-253-cv
*Zappia v. Myovant Sciences Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of January, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER, JR.,
> JOSEPH F. BIANCO,
> BETH ROBINSON,
> > *Circuit Judges.*

---

JOSEPH ZAPPIA, Individually and on Behalf of All Others Similarly Situated,

> *Plaintiff-Appellant,*

> v.                                                                          24-253-cv

MYOVANT SCIENCES LTD., MYOVANT SCIENCES, INC., SUMITOMO PHARMA AMERICA, INC., TERRIE CURRAN, MARK GUINAN, DAVID MAREK, NANCY VALENTE, MATTHEW LANG,

> *Defendants-Appellees.*

---

FOR PLAINTIFF-APPELLANT:             JOSHUA E. FRUCHTER (Joshua M. Rubin and Michael A. Rogovin, Weiss Law, New York, New York and Atlanta, Georgia, *on the brief*), Wohl & Fruchter LLP, Monsey, New York.

FOR DEFENDANTS-APPELLEES:                    BORIS FELDMAN (Elena Hadjimichael, David Y. Livshiz, Peter J. Linken, and Nathan A. Hembree, *on the brief*), Freshfields US LLP, Redwood City, California and New York, New York.

Appeal from the judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on December 29, 2023, is **AFFIRMED**.

Plaintiff-Appellant Joseph Zappia appeals from the district court's dismissal with prejudice of his amended complaint against Defendants-Appellees Myovant Sciences Ltd. ("Myovant"), Myovant Sciences, Inc., Sumitomo Pharma America, Inc., Terrie Curran, Mark Guinan, David Marek, Nancy Valente, and Matthew Lang.   We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND[1]

Zappia's claims arise from representations made in a proxy statement Myovant disseminated to its shareholders in connection with the 2022 sale of Myovant's minority shares to Myovant's majority shareholder, Sumitovant Biopharma Ltd. ("Sumitovant").   Zappia was a minority shareholder in Myovant.

On April 4, 2022, Sumitovant informed the Myovant Board of Directors that it was interested in purchasing all outstanding Myovant shares not already owned by Sumitovant (the

---

[1] The alleged facts discussed in this summary order are taken from the amended complaint and the proxy statement incorporated therein by reference and, as discussed below, are assumed to be true for purposes of evaluating whether dismissal was warranted under Federal Rule of Civil Procedure 12(b)(6).

"minority shares"). Relevant to this appeal, any transaction to acquire Myovant's minority shares would be subject to approval by a majority of minority shareholders.

Around the time of this announcement, Sumitovant, which is a wholly-owned subsidiary of Sumitomo Pharma Co., Ltd. ("Sumitomo Pharma"), held approximately 52% of Myovant's shares. Sumitomo Chemical Co., Ltd. ("Sumitomo Chemical"), in turn, held 51.76% of Sumitomo Pharma. Among the owners of Sumitomo Chemical were Sumitomo Mitsui Trust Bank, Ltd. ("Sumitomo Mitsui Trust"), which, together with Sumitomo Life Insurance Company, held 1.77% of Sumitomo Chemical's shares, and Sumitomo Mitsui Banking Corporation ("Sumitomo Banking"), which owned approximately 1.4% of Sumitomo Chemical's shares and was going to provide Sumitovant with the financing for the purchase of Myovant's minority shares.

These entities are part of a *keiretsu*—a term that refers to a network of Japanese businesses—known as the Sumitomo Group. Zappia alleges that the Sumitomo Group has a 400-year-old history, and that its entities are connected by "cross-shareholdings and informal business relations" and sometimes engage in coordinated activities, such as using similar sources of financing for transactions and participating in "public relations activities to enhance public trust in the members of the Sumitomo Group," including periodically publishing joint newsletters. App'x at 13 ¶ 5, 25 ¶ 40.

In light of Sumitovant's interest in purchasing Myovant's minority shares, the Myovant Board of Directors formed a Special Committee to evaluate the potential transaction. After its formation, the Special Committee ultimately retained Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") as its counsel and Goldman Sachs & Co. LLC ("Goldman Sachs") as its financial advisor. During the course of pre-transaction negotiations, the Special Committee did not solicit

3

third-party bids because Sumitovant, Myovant's majority shareholder, had suggested it would not approve such a transaction. Despite not affirmatively seeking competing offers, the Special Committee did consider unsolicited inbound inquiries to purchase the minority shares. Indeed, an anonymous company expressed interest to Goldman Sachs in a possible transaction with Myovant. However, after preliminary discussions with Goldman Sachs and its own internal review, that anonymous company decided not to submit a formal offer. As a result, Sumitovant was the only entity to make a formal offer to purchase Myovant's minority shares. After unsuccessfully making offers at $22.75, $25.25, $26.25 and $26.75 per share, Sumitovant made its "best and final offer" at $27 per share. App'x at 51–52 ¶ 102. The Special Committee determined that this offer was fair and recommended that Myovant accept the offer, which was consistent with the analyses done by Goldman Sachs and Sumitovant's financial advisor, J.P. Morgan Securities LLC. Those analyses indicated that a fair purchase price ranged from $20.65 to $36.39 per share.

Myovant then solicited, through a proxy statement, its minority shareholders to vote in favor of the deal. Relevant to this appeal, the proxy statement included information that, as Zappia alleged, would suggest to Myovant's shareholders that Skadden was an independent, disinterested party in the deal—that is, the proxy statement represented there was an "absence of conflicts on the part of Skadden" and Skadden was "independent legal counsel." App'x at 29 ¶ 57, 62 ¶ 129. The proxy statement did not disclose that, at the time of this transaction, Skadden represented Sumitomo Banking, Sumitomo Mitsui Trust, and other Sumitomo Group entities in unrelated legal matters. Following the issuance of the proxy statement, a majority of the minority shareholders approved the transaction.

4

Zappia, a Myovant minority shareholder, initiated this putative class action on September 13, 2023, and filed an amended complaint on October 17, 2023, alleging violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, and Securities and Exchange Commission Rule 14a-9, 17 C.F.R. § 240.14a-9 ("Rule 14a-9"), for material misstatements and omissions in the proxy statement disseminated to shareholders in connection with Sumitovant's purchase of Myovant's minority shares. In particular, Zappia alleges that the representations in the proxy statement regarding Skadden's independence—namely, that there was an "absence of conflicts on the part of Skadden" and that Skadden was "independent legal counsel"—were materially misleading because Skadden represented certain Sumitomo Group entities in unrelated matters, and shareholders would have found information about those relationships important to their decision on whether to vote to approve the transaction. On October 31, 2023, Appellees moved to dismiss the amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). On December 28, 2023, the district court granted Appellees' motion and dismissed Zappia's amended complaint on several independent grounds, including that the statements at issue concerning Skadden's independence are not materially false or misleading. *See generally Zappia v. Myovant Sciences Ltd.*, 708 F. Supp. 3d 486 (S.D.N.Y. 2023). The district court also dismissed the amended complaint with prejudice because, after requesting the opportunity to amend at oral argument before the district court, "plaintiffs' counsel, confronted with all [of defendants'] arguments . . . , could not identify a single additional fact that any Second Amended Complaint would allege beyond what ha[d] already been pleaded." *Id.* at 495. This appeal followed.

**DISCUSSION**

On appeal, Zappia argues that the district court erred by: (1) granting Appellees' motion to dismiss on the ground that the proxy statement was not materially misleading because facts related to Skadden's relationship with certain Sumitomo Group entities did not plausibly demonstrate a conflict of interest in Skadden's representation of the Special Committee; and (2) dismissing Zappia's amended complaint with prejudice.[2] We discuss each argument in turn below.

I.       **Section 14(a) Claim**

"We review the District Court's dismissal of a complaint pursuant to Rule 12(b)(6) *de novo*, accepting all the factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Doe v. Guthrie Clinic, Ltd.*, 710 F.3d 492, 495 (2d Cir. 2013) (internal citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Implementing Section 14(a) of the Exchange Act, Rule 14a-9 prohibits "solicitation . . . made by means of any proxy statement . . . containing any statement which . . . is false or

---

[2] Zappia also views as erroneous the two alternative grounds on which the district court dismissed the amended complaint: (1) Skadden's relationship with the Sumitomo Group entities was disclosed in third-party press releases, and thus a reasonable investor would not have found the proxy statement materially misleading in light of this publicly available information; and (2) assuming that the allegedly misleading statements in the proxy were material, Zappia failed to adequately allege facts to sustain the negligence element of a Section 14(a) claim. *See Zappia*, 708 F. Supp. 3d at 494–95. On appeal, however, we need not address the district court's alternative holdings, because, as explained further below, we agree with the district court that the statements at issue are not materially misleading.

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statement therein not false or misleading." 17 C.F.R. § 240.14a-9(a). A fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002) (quoting *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991)).

Here, Zappia argues that a reasonable investor would have deemed it important for voting purposes to know about Skadden's relationship with certain other Sumitomo Group entities because those relationships may have impacted its advocacy during the Myovant transaction, and thus describing Skadden in the proxy statement as independent and without conflicts was materially misleading.[3] In particular, Zappia asserts that, given the "deep ties" among Sumitomo Group members, a shareholder might perceive that Skadden advised the Special Committee to not solicit third-party bids so as to not negatively impact its relationship with Sumitomo Group entities, including Sumitomo Banking and Sumitomo Mitsui Trust, and this, in turn, allowed Sumitovant to purchase Myovant's minority shares at a depressed share price. Appellant's Br. at 23. We disagree.

---

[3] Zappia also argues that Myovant was required to inform shareholders of Skadden's relationship with the Sumitomo Group entities because under *Wilson v. Great American Industries, Inc.*, "potential conflicts of interest" must be disclosed in proxy statements so that shareholders can "judge for themselves what significance to attribute to [the relationship]." 855 F.2d 987, 994 (2d Cir. 1988). We find this argument unpersuasive. We did not hold in *Wilson* that every potential conflict is material under Section 14(a), and even assuming *arguendo* that Skadden had a potential conflict here, we conclude that Zappia's allegations do not plausibly support an inference that a reasonable shareholder would have deemed that fact important for voting purposes. *See id.* at 991 (stating that, for a fact to be considered material for purposes of a Rule 14a-9 claim, "there must be a substantial likelihood that a reasonable shareholder would have considered the fact important in deciding how to vote").

Zappia attempts to show the deep ties among Sumitomo Group entities by alleging that this network of companies shares a 400-year-old history, engages in cross-shareholdings, pursues informal business relations, coordinates public relations activities, and uses similar sources to finance transactions, including, as relevant here, Sumitomo Banking, which provided the financing for this transaction. However, as the district court correctly noted, these facts do not plausibly support an inference that Skadden's advice in the Myovant transaction could have been impacted by virtue of its representation of other Sumitomo Group entities. For example, the amended complaint makes no allegations that Skadden or any Sumitomo Group entity it represents has a direct relationship with Sumitovant or its parent, Sumitomo Pharma, but instead alleges far more attenuated connections—namely, that two Sumitomo Group entities represented by Skadden each held minority shares of less than 2% in Sumitomo Chemical, which is still multiple corporate layers of ownership away from Sumitovant. *Cf. GSI Com. Sols., Inc. v. BabyCenter*, *LLC*, 618 F.3d 204, 211 (2d Cir. 2010) (concluding that, in assessing conflicts, corporate affiliates "should not be considered a single entity for [attorney] conflicts purposes based solely on the fact that one entity is a wholly-owned subsidiary of the other"). Moreover, although Zappia alleges that Sumitomo Banking was selected to provide financing in this transaction, the amended complaint contains no allegations that Sumitovant and Sumitomo Banking maintained a close or ongoing relationship because of their affiliations with the Sumitomo Group. To the extent that Sumitovant is connected to Sumitomo Group entities by engaging in other business activities together, apart from coordinated public relations initiatives, the amended complaint does not plead with specificity what coordinated activities Sumitovant participated in and how those activities would have impacted the advice Skadden gave as counsel to the Special Committee. Absent more particularized facts, the

8

conclusory allegations in the amended complaint amount to speculation that the connections between the Sumitomo Group entities and Sumitovant impacted Skadden's advocacy, which is insufficient to defeat a motion to dismiss. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (stating that "[a]llegations that are conclusory or unsupported by factual assertions are insufficient" to survive a motion to dismiss); *see also Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004) (summary order) (affirming dismissal where plaintiffs supported their Section 14(a) material misrepresentation claim with "mere speculation" regarding the motivations for actions taken by certain institutional shareholders).

Further, Zappia's own allegations describing the pre-transaction negotiations between Myovant and Sumitovant undercut his argument that Skadden's advice was skewed so as to preserve its relationship with other Sumitomo Group entities. Indeed, Zappia alleges that Myovant, based, in part, on Skadden's advice, rejected Sumitovant's offers to purchase shares at $22.75, $25.25, $26.25 and $26.75 before accepting Sumitovant's "best and final offer" of $27 per share, which was within the range of fair purchase prices calculated by the financial advisors for both the Special Committee and Sumitovant. App'x at 51–52 ¶ 102. Zappia also alleges that although the Special Committee decided not to actively solicit bids from third parties because, among other reasons, there was "risk that Sumitovant . . . would be unwilling to support a sale of Myovant to a third party," the Special Committee considered an anonymous company's interest in making a purchase offer for Myovant's outstanding shares. App'x at 37 ¶ 70. However, "after carefully considering the opportunity for a potential transaction" and "discussing the opportunity internally," App'x at 47 ¶ 93, the anonymous company ultimately decided against pursuing a purchase. It did so because, consistent with the Special Committee's reasoning for not soliciting

9

third-party bids, Sumitovant had publicly stated that it would not support any "transaction with a third party" involving Myovant. *Id.* ¶ 91. Accordingly, these allegations undermine the plausibility of any assertion that Skadden could be perceived to have influenced the negotiations so that Myovant received a depressed share price to the benefit of Skadden's Sumitomo Group clients.[4] *See, e.g.*, *Resnik*, 303 F.3d at 154 (explaining that representations made in a proxy statement contradicted plaintiff's allegations that challenged statements were materially false or misleading).

In sum, Zappia fails to allege facts supporting a plausible claim that information regarding Skadden's relationship with the Sumitomo Group entities would have been material to shareholders for voting purposes. Accordingly, the district court correctly dismissed the amended complaint on this ground.[5]

## II.    Leave to Amend

"We review a district court's denial of leave to amend for abuse of discretion," except when "the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

---

[4] To the extent Zappia alleges that the Special Committee should have negotiated a higher share price, given that the upper bound of the ranges of the fairness analyses prepared for these transactions by both parties was between approximately $20.65 and $36.39, such allegations sound in a claim for breach of fiduciary duty, which cannot be cloaked in a suit brought under Section 14(a). *See Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999) ("[N]o general cause of action lies under § 14(a) to remedy a simple breach of fiduciary duty.").

[5] We also conclude that, absent a viable claim imposing primary liability under Section 14(a), the district court correctly dismissed Zappia's claims against the individual defendants for control person liability under Section 20(a). *See Rombach v. Chang*, 355 F.3d 164, 177–78 (2d Cir. 2004) (noting that the Section 20(a) claim "is necessarily predicated on a primary violation of securities law" and dismissing that claim "[b]ecause we have already determined that the district court properly dismissed the primary securities claims against the individual defendants").

Pursuant to Federal Rule of Civil Procedure 15(a), a court should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may deny a plaintiff's request to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Miller v. United States ex rel. Miller*, 110 F.4th 533, 550 (2d Cir. 2024) (internal quotation marks and citation omitted). A request to amend is futile if it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (internal quotation marks and citation omitted).

Zappia argues that, even if the district court properly dismissed his complaint, he should be afforded leave to amend his pleadings in light of our "strong preference for resolving disputes on the merits." Appellant's Br. at 58 (quoting *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 363 (2d Cir. 2023)). We disagree.

Zappia has already amended his complaint once, and provided the district court with no new facts in support of his second request for leave to amend, which he made at the conclusion of oral argument for the motion to dismiss. In his reply brief on appeal, Zappia proposes that he would "supplement his [Sumitomo Group]-related allegations to address any deficiencies identified." Reply at 30–31.

This proposal, however, does not identify any particular facts that would be included upon repleading, nor does it even explain generally how additional facts regarding the Sumitomo Group would address the deficits in Zappia's complaint. Because Zappia has failed "to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in [his] complaint," we affirm the district court's decision to dismiss Zappia's amended complaint

11

with prejudice.  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (denying request for leave to amend where plaintiffs had previously amended their complaint and "identified no additional facts or legal theories—either on appeal or to the District Court—they might assert if given leave to amend")).

\*                    \*                    \*

We have reviewed Zappia's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12