FEUERSTEIN, District Judge:
I. INTRODUCTION
Plaintiff, Furnie Oden ("Plaintiff"), brings the instant action seeking monetary damages against Defendant, Boston Scientific Corporation ("Defendant"), based upon claims of negligence, strict liability (based upon theories of defective design, defective manufacture and failure to warn), breach of express and implied warranties, fraudulent misrepresentation and concealment, negligent misrepresentation, violation of New York General Business Law ("GBL") Sections 349 and 350 and punitive damages. See generally Complaint ("Compl.") [DE 1]. Presently before the Court is Defendant's motion to dismiss the Complaint in its entirety in accordance with Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. See Notice of Motion [DE 6]. Plaintiff opposes the motion. For the reasons that follow, Defendant's motion is GRANTED.
II. FACTUAL BACKGROUND
The following factual allegations have been taken from the Complaint. All facts alleged by the Plaintiff are assumed to be true for purposes of deciding the motion to dismiss and are construed in a light most favorable to the Plaintiff as the non-moving party. See, e.g., LaFaro v. N.Y. Cardiothoracic Grp. , 570 F.3d 471, 475 (2d Cir. 2009) ; Matthews v. City of N.Y. , 889 F.Supp.2d 418, 425 (E.D.N.Y. 2012).
On January 1, 2008, after being hospitalized for deep vein thrombosis and pulmonary embolisms, Plaintiff underwent a surgical procedure involving the implantation of an Inferior Vena Cava ("IVC") filter.[1]
*885 Compl. ¶ 60. The IVC filter used was the "Greenfield Filter system" which was "designed and manufactured by Defendant." Id. ¶ 61. The Greenfield Filter was "implanted in [ ] Plaintiff's right common femoral vein at the L1-L2 level...." Id. ¶ 62. At some point following the Greenfield Filter's implantation, Plaintiff "began to experience constant pains and irritation in the area where the IVC filter had been implanted." Id. ¶ 65. Plaintiff states that "[p]ains caused by an IVC filter are an indication for more serious problems associated [with] the filter, which can include migration, perforation, thrombosis, blockage or other life-threatening side effects." Id.
According to Plaintiff, "Defendant state[s] on different sources that [its] filters were 'Trusted Performance, Timeless Design' and emphasizes [its] filter's design in protection against certain complications." Id. ¶ 67. However, Plaintiff asserts that "Defendant knew its IVC filters were defective in design and knew that the defect was attributable to the design's failure" but that "Defendant failed to disclose to physicians, patients, or Plaintiff in detail that its permanent IVC filter, the Greenfield Filters, were subject to breakage, collapse, migration, causing thrombus and/or the appropriate degree of risk of damage to the vena cava wall and other complications." Id. ¶¶ 68-69. In addition, Plaintiff claims that "Defendant concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the ... Greenfield Filter." Id. ¶ 71. Moreover, "Defendant failed to provide sufficient warnings and instructions that would have put Plaintiff ... on notice of the dangers and adverse effects caused by implantation of the Greenfield Filter." Id. ¶ 72. Specifically, Plaintiff states that Defendant's "brochure and instructions for us[e], lacked any notable warnings or indication to the full extent of risks and hazards related to [the] Greenfield Filter." Id. ¶ 73.
According to Plaintiff, "the complications [he is experiencing] can be attributable to the Greenfield Filter [and include] the increased risk of DVT despite the implanted device, constant pains in the abdominal region, the risk of the filter migrating to [ ] other parts of the vena cava, heart, lungs or other organs, DVT, fracture or breakage of the filter, perforation of the vena cava or other soft tissue...." Id. ¶ 75.
III. DEFENDANT'S MOTION TO DISMISS
A. Standard of Review
In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P. , 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); Grullon v. City of New Haven , 720 F.3d 133, 139 (2d Cir. 2013). The plaintiff must satisfy "a flexible 'plausibility standard.' " Iqbal v. Hasty , 490 F.3d 143, 157 (2d Cir. 2007), rev'd on other grounds sub nom.
*886 Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 546, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955 ; see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC , 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.' ") (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ).
The Supreme Court clarified the appropriate pleading standard in Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937 ; see id. at 678, 129 S.Ct. 1937 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' ") (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ). Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." Id. at 678, 129 S.Ct. 1937 (citing Twombly , 550 U.S. at 556-57, 127 S.Ct. 1955 ) (internal citations omitted).
In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint. Chambers v. Time Warner, Inc. , 282 F.3d 147, 152-53 (2d Cir. 2002) ; see also ASARCO LLC v. Goodwin , 756 F.3d 191, 198 (2d Cir. 2014).
B. Preliminary Issues
1. Consideration of Additional Materials
As an initial matter, Defendant has appended extrinsic documentation to its motion papers for the Court's consideration. However, as the Court is only permitted to consider a narrow universe of documents outside of or otherwise attached to the Complaint, see ASARCO LLC , 756 F.3d at 198, it is necessary to determine whether these additional materials are properly considered in adjudicating the motion. Defendant has attached the following documents to the January 24, 2018 Declaration of Angela R. Vicari in Support of Boston Scientific's Motion to Dismiss ("Vicari Decl."): (1) Greenfield Inferior Vena Cava Filter, Titanium Model, Directions for Use, operative in 2008; (2) Greenfield Inferior Vena Cava Filter, Stainless Steel Model, Directions for Use, operative in 2008; (3) a May 6, 2014 Safety Communication issued by the Food and Drug Administration, titled "Removing Retrievable Inferior Vena Cava Filters : FDA Safety Communication;" (4) a decision and order issued in *887 Douse v. Boston Scientific Corporation , No. 2:17-cv-599-FtM-38MRM, 2017 WL 9672522 (M.D. Fl. Dec. 18, 2017) ; (5) product brochure for the Greenfield Inferior Vena Cava Filter ; and (6) the webpage for the Greenfield Inferior Vena Cava Filter. Having reviewed the Complaint, attachments (1)-(3) and (5)-(6) are explicitly referenced. See, e.g. , Compl. ¶¶ 49-53, 126-128, 141-147, 177-183, 194-200. Therefore, these documents shall be considered in adjudication of the motion to the extent they are relevant and material. See See McLennon v. City of New York , 171 F.Supp.3d 69, 88 (E.D.N.Y. 2016) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents.") (quoting Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria , 265 F.R.D. 106, 123 (S.D.N.Y. 2010) ); see also McKevitt v. Mueller , 689 F.Supp.2d 661, 665 (S.D.N.Y. 2010) (recognizing that a court may consider "documents that the plaintiff relied on in bringing suit and that are either in plaintiff's possession or that the plaintiff knew of when bringing suit"); Svensson v. Securian Life Ins. Co. , 706 F.Supp.2d 521, 525 (S.D.N.Y. 2010) (considering an insurance policy when the complaint "explicitly refer[ed] to, and relie[d] on the [p]olicy") (alteration in original). As to attachment (4), the decision in Douse , "[j]udicial notice may be taken of public filings," Kavowras v. New York Times Co. , 328 F.3d 50, 57 (2d Cir. 2003), and therefore this decision will be considered to the extent it is relevant to the adjudication of this matter. See also Glob. Network Commc'ns, Inc. v. City of New York , 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc. , 146 F.3d 66, 70 (2d Cir. 1998) ).
C. Discussion
1. Negligence & Strict Products Liability Claims
Plaintiff has interposed claims based upon theories of negligence and strict liability. Under New York law, a Plaintiff's claim based upon an alleged design defect or manufacturing defect sounding in either negligence or strict liability are functionally equivalent and will be analyzed concurrently. See Jarvis v. Ford Motor Co. , 283 F.3d 33, 62-63 (2d Cir. 2002) (citing Denny v. Ford Motor Co. , 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730, 735 (1995) ) ("In general ... the strict liability concept of 'defective design' is functionally synonymous with the earlier negligence concept of unreasonable designing" (internal citation omitted) ); Monell v. Scooter Store, Ltd. , 895 F.Supp.2d 398, 415-16 (N.D.N.Y. 2012) ; Cowan v. Costco Wholesale Corp. , No. 15-CV-05552, 2017 WL 59080, at *4 (E.D.N.Y. Jan. 5, 2017) ("[u]der New York law, the elements of negligence claims based on design defect [and] manufacturing defect ... theories are the same as those under strict liability.") (alteration in original); Castaldi v. Land Rover N. Am., Inc. , 06-CV-1008, 2007 WL 4165283, at *11 (E.D.N.Y. Nov. 21, 2007) ("The standard of fault in manufacturing defect cases is simply strict liability, regardless of whether the claim is characterized as negligence or strict liability."). Further, it is well-settled that " '[w]here liability is predicated on a failure to warn, New York views negligence and strict liability claims as equivalent.' " Estrada v. Berkel Inc. , 14 A.D.3d 529, 530, 789 N.Y.S.2d 172 (App. Div. 2005) (internal citation omitted); see Monell , 895 F.Supp.2d at 416 ; Sorto-Romero v. Delta Int'l Machinery Corp. , No. 05-CV-5172, 2007 WL 2816191, at *11 (E.D.N.Y. 2007) ;
*888 Savage v. Beiersdorf Inc. , No. 13-CV-0696, 2013 WL 5532756, at *5 (S.D.N.Y. Sept. 30, 2013) ("[F]ailure to warn claims are identical under strict liability and negligence theories of recovery.").
Applying New York law, there are four theories under which a plaintiff may pursue a recovery based upon a claim of products liability: (1) strict liability; (2) negligence; (3) express warranty and (4) implied warranty. Hilaire v. DeWalt Indus. Tool Co. , 54 F.Supp.3d 223, 252 (E.D.N.Y. 2014) ; Voss v. Black & Decker Mfg. Co. , 59 N.Y.2d 102, 106-07, 463 N.Y.S.2d 398, 401, 450 N.E.2d 204, 207 (1983). In order to adequately plead a claim with regard to any of these four theories, the plaintiff must show that the product at issue was defective and that the defectively designed product was the actual and proximate cause of the plaintiff's injury. Voss , 59 N.Y.2d at 107-09, 463 N.Y.S.2d at 402-03, 450 N.E.2d at 208-09 ; see 89 N.Y. Jur. 2d Products Liability § 2.
There are three types of defects recognized under New York law: (1) design defects; (2) manufacturing defects; and (3) defective or inadequate warnings. Voss , 59 N.Y.2d at 106, 463 N.Y.S.2d at 401, 450 N.E.2d at 207 ; McCarthy v. Olin Corp. , 119 F.3d 148, 154-55 (2d Cir. 1997). Plaintiff claims that design defects, manufacturing defects and a failure to provide adequate warnings caused his injuries. See generally Compl.
a. Design Defect
"A defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." Scarangella v. Thomas Built Buses, Inc. , 93 N.Y.2d 655, 659, 695 N.Y.S.2d 520, 522, 717 N.E.2d 679, 681 (1999) (internal quotation omitted). A claim premised upon a defective design theory requires that Plaintiff show: (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing Plaintiff's injury. See Barban v. Rheem Textile Systems, Inc. , 2005 WL 387660, at *7 (E.D.N.Y. 2005) ; Lent v. Signature Truck Sys., Inc. , No. 06-CV-569S, 2011 WL 4575312, at *2 (W.D.N.Y. Sept. 30, 2011) ; Delehanty v. KLI, Inc. , 663 F.Supp.2d 127, 133 (E.D.N.Y. 2009) ; Voss, 59 N.Y.2d at 107, 463 N.Y.S.2d 398, 450 N.E.2d 204 ; Pahuta v. Massey-Ferguson, Inc. , 170 F.3d 125, 134-35 (2d Cir. 1999).
Plaintiff's design defect claim fails since he has not pleaded sufficient facts satisfying the first and second elements of this cause of action. Turning to the first element, Plaintiff fails to "identify a particular problem in the design of [the Greenfield Filter]" and his attempts to merely plead that the Greenfield Filter is "defective" are insufficient to meet the required plausibility standard as set forth in Iqbal and Twombly. Guariglia , 2018 WL 1335356, at *3 ; see Reed v. Pfizer, Inc. , 839 F.Supp.2d 571, 577 (E.D.N.Y. 2012) (dismissing design defect claim, in part, because plaintiff "eschew[ed] the opportunity to plead facts identifying [the product's] design defect, [plaintiff] merely plead[s] the legal conclusion that the [the product] was defective."). The list of allegedly unreasonable risks posed by the Greenfield Filter's purportedly defective design, see Compl. ¶ 84, does not identify a specific component or particularized issue with the design itself. Similarly, Plaintiff's allegation that the Greenfield Filter was "defective in design ... because when it left the hands of Defendant, the product was unreasonably dangerous," id. ¶ 98, lacks any facts indicating the particular component that was defective or otherwise identifying *889 a specific problem with the Greenfield Filter that caused it to be unreasonably dangerous. Without such facts, Plaintiff's design defect claim fails. See, e.g., Reed , 839 F.Supp.2d at 577 ; Surdo v. Stamina Prods, Inc. , No. 15-CV-2532, 2015 WL 5918318, at *4 (E.D.N.Y. Oct. 9, 2015) (dismissing claim where the Plaintiff alleged that inversion table was "inherently dangerous," "defective," "hazardous, unsuitable," and "defectively designed," but did not allege how the product was defectively designed); Cavanagh v. Ford Motor Co. , No. 13-CV-4584, 2014 WL 2048571, at *3 (E.D.N.Y. May 19, 2014) (dismissing claim where the Plaintiff simply alleged truck "was defective"); Goldin v. Smith & Nephew, Inc. , No. 12-CV-9217, 2013 WL 1759575, at *4 (S.D.N.Y. Apr. 24, 2013) (dismissing claim where the Plaintiff alleged "propensity" of product "to dislocate," but did not "identify any particular problem in the design"); Am. Guar. and Liability Ins. v. Cirrus Design Corp. , No. 09-CV-8357, 2010 WL 5480775, at *2 (S.D.N.Y. Dec. 30, 2010) (dismissing claim where the Plaintiffs failed to identify the actual defective component of a product and recognizing that "this unspecified defect could encompass any one of hundreds, if not thousands, of component parts").
Plaintiff's design defect claim also fails on the independent ground that the Complaint does not plead the existence of a feasible alternative design. See Cowan , 2017 WL 59080, at *2 ; Guariglia , 2018 WL 1335356, at *3 (recognizing that to survive a motion to dismiss a plaintiff "must plead facts alleging the existence of a feasible alternative design"). The only paragraph in the Complaint specifically referring to this element merely states that "safer, reasonable alternative designs existed and could have been utilized," Compl. ¶ 100, but fails to identify what feasible alternative designs are available. See Am. Guar. and Liability Ins. , 2010 WL 5480775, at *2 (dismissing products liability claim, in part, where plaintiff failed to make "any mention of a feasible alternative design"); Guariglia , 2018 WL 1335356, at *3 (same). While Plaintiff asserts that he has met this requirement by pleading that "retrievable filters were viable alternative designs to ... permanent Greenfield Filters," Memorandum of Law in Opposition to Defendant Boston Scientific Corporation's Motion to Dismiss Plaintiff's Complaint ("Pl.'s Opp'n") at 6 (citing Compl. ¶¶ 34-38; 47-52; 54-16), a review of these allegations shows that the Greenfield Filter implanted in Plaintiff constituted a "permanently implanted metal device" which is "marketed and sold as a permanent filter." Compl. ¶¶ 35-36, 38. In contrast, a retrievable filter is "designed to be removed from a patient when the risk of PE/DVT has passed. They are not designed to remain inside the IVC indefinitely." Id. ¶ 34 (emphasis added). Thus, based upon Plaintiff's own allegations, the Greenfield Filter, which is a permanent filter, is not comparable to a retrievable filter, since the design and purpose of these two products is different. Therefore, Plaintiff's attempt to allege that the retrievable filter represents a feasible design alternative is unavailing. See Hilaire , 54 F.Supp.3d at 248-49 ("[A] plaintiff cannot satisfy his burden to propose a feasible alternative design by proposing that an entirely different product could have been used."); Simon v. Smith & Nephew, Inc. , 990 F.Supp.2d 395, 405 (S.D.N.Y. 2013) (holding that "an allegation that [defendant] could have manufactured a different product altogether, or that others have done so, does not itself make out a plausible claim of design defect"); see also Pinello v. Andreas Stihl AG & Co. KG , No. 08 CV 425, 2011 WL 1302223, at *16 (N.D.N.Y. Mar. 31, 2011) (holding that plaintiff's contention that an "entirely different product" could have been used did not create a dispute of material *890 fact as to whether there was an alternative design).
Based upon the foregoing, Plaintiff's negligence and strict liability claims premised upon a design defect theory are dismissed.
b. Manufacturing Defect
"To plead and prove a manufacturing flaw under either negligence or strict liability, the plaintiff must show that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,' and that the defect was the cause of plaintiff's injury." Colon ex rel. Molina v. BIC USA, Inc. , 199 F.Supp.2d 53, 85 (S.D.N.Y. 2001) (quoting Caprara v. Chrysler Corp. , 52 N.Y.2d 114, 129, 436 N.Y.S.2d 251, 417 N.E.2d 545 (1981) ); Cowan , 2017 WL 59080, at *3. "[A] manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." Colon ex rel. Molina , 199 F.Supp.2d at 85. It follows that "a claim devoid of allegations that a particular unit differed when compared to others in the same product line will be dismissed." Guariglia v. Procter & Gamble Co. , No. 215CV04307, 2018 WL 1335356, at *5 (E.D.N.Y. Mar. 14, 2018) ; see Cowan , 2017 WL 59080, at *4 (dismissing manufacturing defect claim where the Plaintiff failed to plead that the can of cooking spray differed from other units of the same product); Bertini v. Smith & Nephew, Inc. , 8 F.Supp.3d 246, 257 (E.D.N.Y. 2014) ("A manufacturing defect claim should be dismissed if plaintiff has not alleged that 'the particular [product] administered to her had a defect compared to other samples of that [product].' ") (quoting Reed , 839 F.Supp.2d at 577 (E.D.N.Y. 2012) ). Thus, the "decisive issue" when analyzing a manufacturing defect claim is "the existence of the defect without regard to the care exercised by the manufacturer." Caprara , 52 N.Y.2d at 129, 436 N.Y.S.2d 251, 417 N.E.2d 545.
In support of this claim, Plaintiff pleads that the "Greenfield Filter... contained a condition or conditions, which Defendant did not intend, at the time it left Defendant's control and possession" and that a "malfunction of the Defendant's IVC filter, while implanted in Plaintiff, resulted in his subsequent injuries and health problems." Compl. ¶¶ 107, 109; see also id. ¶ 110 (stating that "as a result of the condition or these conditions, the product injured Plaintiff and failed to perform as safely as the ordinary consumer would expect...."). These claims are conclusory since they fail to allege a specific manufacturing defect affecting the Greenfield Filter implanted in Plaintiff as compared to other Greenfield Filters that were produced by Defendant. Rather, the Complaint merely alleges that some "condition or conditions" existed that ultimately caused Plaintiff's injuries. However, this vague assertion fails to place Defendant on notice as to what the particular error in the manufacturing process was or, at the very least, what component or components of the Greenfield Filter deviated from Defendant's manufacturing standards when compared with a other Greenfield Filters. See Cowan , 2017 WL 59080, at *3 (to state a claim based upon a manufacturing defect theory, a plaintiff "must allege that [ ] the product was defective due to an error in the manufacturing process"); Guariglia , 2018 WL 1335356, at *5 (dismissing manufacturing defect claim, in part, where plaintiff's claims were "not plausibly alleged because [they] failed to allege how the units they purchased were manufactured differently from other [units]."); Bertini , 8 F.Supp.3d at 257 (dismissing manufacturing defect claim where (1) "Plaintiffs have failed to plead facts showing that the *891 specific device implanted in Mr. Bertini deviate[d] in quality and other performance standards from the other R3 Systems and R3 metal liners that defendant marketed and sold" and (2) where the complaint "does not attribute the R3 System and R3 metal liner's failure to a specific portion of the defendant's manufacturing process that went awry."); see also Goldin , 2013 WL 1759575, at *3 ("Plaintiff has failed to allege any facts regarding the manufacturing process. The Complaint says nothing about a mishap in the manufacturing process, improper workmanship, or use of defective materials. As a result, there is no reason at all to believe that the particular R3 Constrained Liner used in her surgery was defective as compared to other products manufactured pursuant to the same design.") (emphasis in original).
Based upon the foregoing analysis, Plaintiff's negligence and strict liability claims premised upon a manufacturing defect theory are dismissed.
c. Failure to Warn
Pursuant to New York law, "a plaintiff may assert that a product is defective because the manufacturer failed to provide adequate warnings regarding the risks and dangers associated with the use, or foreseeable misuse, of its product." Sorto-Romero , 2007 WL 2816191, at *11 (citing Urena v. Biro Mfg. Co. , 114 F.3d 359, 365-66 (2d Cir. 1997) ); see Hilaire , 54 F.Supp.3d at 253 (citing Voss , 59 N.Y.2d at 107, 463 N.Y.S.2d at 401, 450 N.E.2d at 207 ); see also Reed , 839 F.Supp.2d at 575 ("To prevail on a failure to warn claim, a plaintiff must prove (1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm") (internal citation omitted). "As part of satisfying th[e]se elements, a plaintiff is required to [plead facts illustrating] that the product did not contain adequate warnings." Reed , 839 F.Supp.2d at 575. Therefore, a claim premised upon a failure to warn theory should be dismissed in the event a plaintiff fails to plead facts establishing how or why the warning provided was inadequate. See id. ; Black v. Covidien, PLC , No. 17-CV-6085, 2018 WL 573569, at *3 (W.D.N.Y. Jan. 26, 2018) ("The court should dismiss a failure to warn claim if "a plaintiff does not plead facts indicating how the provided warnings were inadequate.") (internal citation omitted); Guariglia , 2018 WL 1335356, at *5 (same). Under New York law, a manufacturer adequately dispatches its "duty to warn of a product's risks 'by providing information to the prescribing physician, not to the patient directly.' " Black , 2018 WL 573569, at *3 (quoting Alston v. Caraco Pharm., Inc. , 670 F.Supp.2d 279, 284 (S.D.N.Y. 2009) ).
Plaintiff's Complaint contains numerous conclusory allegations in support of this claim, including that "Defendant failed to provide sufficient warnings and instructions," Compl. ¶ 72, that "Defendant knew or should have known, and adequately warned that its product created a risk of serious and dangerous side effects, including but not limited to, the migration of the filter to the other parts of the vena cava, heart or other organs, DVT, blood clots, facture or breakage of the filter and other complications," id. ¶ 116, that "[t]he warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer," id. ¶ 117, that the product brochure differs from the instructions for use since it "only provides limited information [concerning] possible complications from the use of the IVC filter," id. ¶¶ 126-27, and that "Defendant's warnings page on their website which possibly reflects the warning given in their [instructions for use lists only] general complications and adverse events *892 but ... fails to address the full extent of complications [and] magnitude of risks involved with the IVC filter." Id. ¶¶ 128, 132; see also id. ¶¶ 74, 84, 85, 111-137.
The "Instructions for Use" included with the Greenfield Filter contain a section entitled "Potential Complications" which sets forth "[p]otential complications associated with the use of vena cava Filters." Vicari Decl., Ex. B at 9; Ex. C at 8. The list of complications include many of the same risks alleged in the Complaint. Compare id. Ex. B at 9; Ex. C at 8 with Compl. ¶¶ 75, 123, 235. Indeed, while Plaintiff alleges that Defendant "failed to properly warn consumers properly of the increased risks of fracture or migration of the IVC filter, perforation of the heart, lungs, other vital organs, the wall of the vena cava tissue, cardiac or pericardial tamponade, chest pain, shortness of breath, severe recurrent pulmonary embolism and DVT, occlusion or clogging on the IVC filter, subsequent revision surgeries, difficultly or impossibility of removal, and possibly death," Compl. ¶ 135, the "Potential Complications" place the physician on notice of many of these potential risks. See Vicari Decl., Ex. B at 9; Ex. C at 8 (setting forth risks associated with use of the device including: placement of the Filter, movement or migration of the Filter, formation of clots which "could result in complete blockage of blood flow," Hematoma or bleeding, infection, potential migration of the Filter, perforation of the vena cava, adjacent blood vessels or organs, pulmonary embolism, air embolism, thrombosis and death). In addition, contrary to Plaintiff's allegations, the product brochure contains a nearly identical section entitled "Potential Adverse Events" which includes many of the same complications as set forth in the Instructions for Use. See Vicari Decl., Ex. F (product brochure). Although the web page for the Greenfield Filter does not set forth the above potential complications directly, there is a clearly delineated link to a "Key Resources" section which includes relevant "Indications, Safety, and Warnings." Id. , Ex. G (Greenfield Filter Webpage).
Notwithstanding these warnings, the Complaint fails to provide facts identifying how or why the included warnings were inadequate. Although Plaintiff claims that Defendant failed to warn or otherwise provided inadequate warnings of all of the aforementioned risks, the Complaint is silent as to how the warnings that were indisputably provided, both in Defendant's Instructions for Use as well as the product brochure, were inadequate. Moreover, Plaintiff has failed to provide the necessary factual nexus showing how the warnings that were provided were insufficient since merely "asserti[ng] that warnings were not 'adequate' or 'sufficient' are nothing more than legal conclusions...." Reed , 839 F.Supp.2d at 576. Without facts setting forth what the warnings stated and how and/or why the warnings were inadequate, Plaintiff's failure to warn claim is insufficiently pleaded. See Black , 2018 WL 573569, at *3 (dismissing failure to warn claim where plaintiff failed to "identify what warnings Defendant gave to Mrs. Black's physicians, how they were inadequate, or what warnings should have been given."); Parillo v. Stryker Corp. , No. 15-CV-155, 2015 WL 12748006, at *7 (N.D.N.Y. Sept. 29, 2015) ("Plaintiff fails to state a plausible failure to warn claim because he does not allege any facts whatsoever as to what the warning was, or how it was inadequate."); see also Cavanagh v. Ford Motor Co. , No. 13 Civ. 4584, 2014 WL 2048571, at *4 (E.D.N.Y. May 19, 2014) ("The Complaint does not plead any facts supporting a failure to warn claim. Because Plaintiffs have not adequately specified the danger that was not warned against, they cannot state a plausible claim for failure to warn.").
*893 The Complaint also fails to set forth actual injuries Plaintiff experienced versus those complications which potentially could result from implantation of the Greenfield Filter. See Compl ¶¶ 65, 75 (stating that Plaintiff "began to experience constant pains and irritation" and is "at risk of suffering from serious health complication[s] due to the long-term implant of the filter") (emphasis added). See Morrison v. Hoffmann-La Roche, Inc. , No. 14CV4476, 2016 WL 5678546, at *8 (E.D.N.Y. Sept. 29, 2016) (dismissing failure to warn claim where complaint was "devoid of any description of Plaintiff's actual injuries ... [was] silent about the content of [the drug's] warnings and d[id] not allege that the [drug's] label specifically failed to warn of the[ ] injury risks [enumerated by plaintiff]" and opining that "courts of the Second Circuit consistently have held that mere assertions that warnings on product labels are inadequate constitute conclusory statements lacking in empirical support.").
Nor does the Complaint contain any nonconclusory allegations that Plaintiff's treating physician was not adequately informed or apprised of the potential risks associated with the Greenfield Filter especially in light of the printed warnings contained in the Directions for Use and product brochure. See Compl. ¶¶ 118, 121, 133 (setting forth conclusory assertion that "Defendant failed to adequately warn the medical community and consumers of the defective product"); Banker v. Hoehn , 278 A.D.2d 720, 721, 718 N.Y.S.2d 438, 440 (App. Div. 2000) ("Under the doctrine of 'learned intermediary', the manufacturer of the medical device satisfies its duty to warn of potential adverse effects when it adequately warns medical professionals who use the device in the treatment of patients. When this occurs, the medical professional acts as an "learned intermediary" between the manufacturer and the patient, relieving the manufacturer of any responsibility to directly warn the patient of potential adverse side effects."); see also Bee v. Novartis Pharm. Corp. , 18 F.Supp.3d 268, 290 (E.D.N.Y. 2014) ("[A] defendant manufacturer has an obligation to inform the treating physician of the risks of a medical device so that the physician, acting as the learned intermediary, may properly inform the patient.") (internal citation omitted); Steinman v. Spinal Concepts, Inc., No. 05-CV-774S, 2011 WL 4442836, at *9 (W.D.N.Y. Sept. 22, 2011) ("It is well settled with respect to prescription drugs and medical devices that a manufacturer's duty to warn is owed not [to] the patient, but to the treating physician as the 'learned intermediary.' ") (alteration in original); Black , 2018 WL 573569, at *3 (dismissing failure to warn claim where "Plaintiffs do not identify what warnings Defendant gave to Mrs. Black's physicians, how they were inadequate, or what warnings should have been given. The alleged 'facts' supporting Plaintiffs' failure to warn claim are merely legal conclusions, which the court need not accept as true."). Therefore, to the extent Plaintiff's failure to warn claim is premised upon Defendant's alleged failure to warn "consumers" of the potential risks or complications associated with the use of the Greenfield Filter, such a claim is not viable in the first instance. See Steinman , 2011 WL 4442836, at *9 ; Davids v. Novartis Pharm. Corp. , 857 F.Supp.2d 267, 286 (E.D.N.Y. 2012) ("Under the 'learned intermediary rule' the manufacturer of a prescription drug [or medical device] does not have a duty to warn the patient of the dangers involved of the product, but rather the duty is owed to the patient's doctor."). Likewise, Plaintiff has pleaded no facts to suggest that his physician did not possess independent knowledge about the risks associated with use of the Greenfield Filter separate and apart from of any such warnings. See *894 McDowell v. Eli Lilly & Co. , 58 F.Supp.3d 391, 407 (S.D.N.Y. 2014) ("A prescriber's independent knowledge of the risks of a drug or medical device breaks the chain of proximate causation.").
Based upon the foregoing, Plaintiff's negligence and strict liability claims premised upon a failure to warn theory are dismissed.
2. Breach of Express Warranty
"For a breach of express warranty claim to survive a motion to dismiss, Plaintiff must allege that 'there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to [Plaintiff's] detriment.' " Cowan , 2017 WL 59080, at *5 (quoting DiBartolo v. Abbott Labs. , 914 F.Supp.2d 601, 625 (S.D.N.Y. 2012) ); see New York Uniform Commercial Code ("N.Y.U.C.C.") § 2-313(1) ; Goldin , 2013 WL 1759575, at *6 ("A successful claim of a breach of express warranty requires proof that an express warranty existed, was breached, and that plaintiff had relied on that warranty.") (quoting Reed , 839 F.Supp.2d at 578 ); Goldemberg v. Johnson & Johnson Consumer Companies, Inc. , 8 F.Supp.3d 467, 482 (S.D.N.Y. 2014) ("To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."). Thus, "A breach of express warranty claim require[s] a plaintiff to plead some affirmative statement of fact that forms the basis of the warranty. The statement must be definite enough so that its 'natural tendency [is] ... to induce the buyer to purchase.' " Cowan , 2017 WL 59080, at *5 (quoting Becker v. Cephalon, Inc. , 14 CIV. 3864, 2015 WL 5472311, at *7 (S.D.N.Y. Sept. 15, 2015) ) (alteration in original); see Miccio v. Conagra Foods, Inc. , 224 F.Supp.3d 200, 207 (W.D.N.Y. 2016) ("[B]ecause generalized and vague allegations that express warranties were made are not enough, Plaintiff's claim fails on the first element for lacking an allegation of an affirmative promise on the part of [the seller] as to the product's safety."). In addition, "a successful breach of warranty claim requires that the product be defective." Reed , 839 F.Supp.2d at 578 (citing Plemmons v. Steelcase Inc. , No. 04 Civ. 4023, 2007 WL 950137, at *5 (S.D.N.Y. Mar. 29, 2007) ); Morrison v. Hoffmann-La Roche, Inc. , No. 14 CV 4476, 2016 WL 5678546, at *10 (E.D.N.Y. Sept. 29, 2016). Therefore, where a complaint contains insufficient factual allegations (1) setting forth definite statements made by the seller which induced a buyer to purchase the product and/or (2) that the product was defective, a plaintiff's express warranty claim will fail as a matter of law. See Goldin , 2013 WL 1759575, at *6.
Plaintiff alleges that "Defendant expressed in [its] literature, advertisements, [ ] promotions and through representations by their marketing team and sales agents that Greenfield Filters were safe, effective and fit for implantation into the IVC to prevent PE and DVT for which they were designed, manufactured and marketed." Compl. ¶ 140. According to Plaintiff, "Defendant's webpage makes claims about the filter such as it[s] [ ] 'Proven Stability,' 'Established Filter Performance' and 'Filter Design promotes Clot Lysis.' " The available product brochure,[2] states, in part, that the "Greenfield filter has 'Recurved hooks [which] are designed *895 to provide protection against penetration.' " Id. ¶¶ 143-145. Based upon these representations, "Plaintiff ... through Plaintiff's physicians and/or other healthcare providers, did rely on Defendant's express warranties regarding the safety and efficacy of their product" and "[m]embers of the medical community, including physicians and other healthcare professionals, relied upon Defendant's representations and express warranties in connection with the use[,] recommendation, description, and implantation of the Greenfield Filter." Id. ¶¶ 152-153.
Assuming these statements, as contained in Defendant's brochure and website, rose to the level of material statements amounting to a warranty, Plaintiff's allegations insufficiently plead his reliance either directly or through his physician intermediary on this warranty as a basis for the contract with the immediate seller. See Goldemberg , 8 F.Supp.3d at 482. Indeed, the Complaint merely alleges Plaintiff's purported "reliance" without providing any underlying factual details concerning when, where and how such reliance arose. Even assuming that Plaintiff was provided with a brochure "at the time of his implant," Compl. ¶ 142, the Complaint is devoid of any facts that would permit the inference that Plaintiff actually read these statements and directly relied upon them when making the decision to utilize Defendant's product. In addition, there are no facts illustrating that Plaintiff's physicians ever reviewed the statements contained on Defendant's website or those set forth in the product brochure prior to making the decision to recommend use of the Greenfield Filter. Without such allegations, any purported claim that such reliance existed is implausible. See Westport Marina, Inc. v. Boulay , 783 F.Supp.2d 344, 355 (E.D.N.Y. 2010) (dismissing claim of breach of express warranty on summary judgment where there was no indication that plaintiffs "ever read or even saw (let alone relied upon) either the Product's labels or any marketing literature provided by Boulay prior to making their purchasing decision."); Teixeria v. St. Jude Med. S.C., Inc. , 193 F.Supp.3d 218, 225 (W.D.N.Y. 2016) (recognizing that a plaintiff "must allege where, when or how the alleged promise or statement was provided to [himself] or his physicians" and dismissing express warranty claim where "Plaintiff has not pleaded any facts regarding where, when, and how the alleged statements and promises regarding the Durata lead were made to him or his physicians by a representative of St. Jude.").
In light of the fact that Plaintiff has failed to sufficiently plead facts permitting the inference that he or his physicians relied on the statements set forth on Defendant's website and/or product brochure, Plaintiff's breach of express warranty claim is dismissed.
3. Breach of Implied Warranty of Merchantability
In order for a plaintiff to plead a claim based upon breach of an implied warranty, the following elements must be alleged: (1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect was the proximate cause of the injury. Cavanagh , 2014 WL 2048571, at *5 ; Teixeria , 193 F.Supp.3d at 226.
As a breach of implied warranty claim requires that Plaintiff plead sufficient factual allegations that the Greenfield Filter was defectively designed or manufactured, and as the Court has previously found that Plaintiff has failed to plead the necessary predicate elements to support his design and manufacturing defect claims, see supra at 889-91, Plaintiff's *896 breach of implied warranty of merchantability claim necessarily fails as a matter of law. See Lewis v. Abbott Labs., No. 08 CV 7480, 2009 WL 2231701, at *6 (S.D.N.Y. July 24, 2009) (holding that where "plaintiff has not pleaded necessary elements to support a design ... defect claim," "plaintiff has failed to plead an essential element of her breach of implied warranty claim"); Simon , 990 F.Supp.2d at 407 ("The Amended Complaint fails to allege that ... [the] device was defectively designed. It thus fails to state a claim for breach of implied warranty."); Morrison , 2016 WL 5678546, at *11 (dismissing breach of implied warranty claim where plaintiff failed to sufficiently plead underlying design defect); see also Guariglia , 2018 WL 1335356, at *6 ("In pleading a claim for breach of the implied warranty of merchantability, a plaintiff must show, that a defect in the product was a substantial factor in causing the injury and ... that the defect complained of existed at the time the product left the manufacturer or entity in the line of distribution being sued.") (internal quotations and citation omitted) (ellipsis in original).
In light of the foregoing analysis, Plaintiff's claim premised upon the breach of implied warranty of merchantability is dismissed.
4. Breach of Implied Warranty of Fitness
"[T]he implied warranty of fitness for a particular purpose does not arise in every consumer sale, but only when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge." Catalano v. BMW of N. Am., LLC , 167 F.Supp.3d 540, 558 (S.D.N.Y. 2016) (quoting Abraham v. Volkswagen of Am., Inc. , 795 F.2d 238, 249 (2d Cir. 1986) ); see Meserole v. Sony Corp. of Am. , No. 08 CV. 8987, 2009 WL 1403933, at *8 (S.D.N.Y. May 19, 2009). Thus, "[t]o establish a claim for the breach of an implied warranty of fitness for a particular purpose, 'the buyer must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill.' " Guariglia , 2018 WL 1335356, at *8 (quoting Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC , No. 05-CV-837, 2007 WL 1834599, at *9 (N.D.N.Y. June 26, 2007) ); see N.Y.U.C.C. § 2-315.[3] "Where a plaintiff fails to plead that a defendant knew of the particular purpose for which that plaintiff was buying a product, a complaint will be dismissed." Guariglia , 2018 WL 1335356, at *8 ; see Catalano , 167 F.Supp.3d at 558.
Having reviewed the allegations underlying this claim, see Compl. ¶¶ 166-173, it is evident that this cause of action does not satisfy the flexible plausibility standard required by Iqbal . Apart from the fact that the allegations are altogether conclusory, the Complaint fails to plead that the Defendant was made aware of the particular purpose for which Plaintiff purchased the Greenfield Filter. See Guariglia , 2018 WL 1335356, at *8. While the *897 Complaint does allege that "Defendant knew of the intended use of its Greenfield Filter ... and impliedly warranted the product to be of merchantable quality," Compl. ¶ 168, a product's intended or ordinary purpose is not necessarily equivalent with a particular purpose for which Plaintiff seeks to purchase a product. If it were, it would render the implied warranty for a particular purpose superfluous since such a claim could be encompassed within the implied warranty of merchantability itself. See N.Y. U.C.C. § 2-315 (Official Comment) (differentiating "particular purpose" from "ordinary purpose"). Moreover, the Complaint does not contain any factual allegations leading to the inference that Defendant was aware that Plaintiff and/or his physicians were directly relying upon Defendant's skill and judgment when the determination was made to purchase the Greenfield Filter.
Since Plaintiff has failed to plead that Defendant knew of a particular purpose for which Plaintiff purchased the Greenfield Filter or that Plaintiff and/or his physicians were relying upon Defendant's specialized skill and judgment, Plaintiff's claim premised upon this theory fails as a matter of law.
5. Fraudulent Misrepresentation
In order to state a claim sounding in fraud under New York law, a plaintiff must set forth facts illustrating "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." Premium Mortg. Corp. v. Equifax, Inc. , 583 F.3d 103, 108 (2d Cir. 2009) ; see Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am. , 896 F.Supp.2d 198, 206 (E.D.N.Y. 2012) ; Schwarz v. ThinkStrategy Capital Mgmt. LLC , 797 F.Supp.2d 439, 444 (S.D.N.Y. 2011) ; Silverman v. Household Fin. Realty Corp. of N.Y. , 979 F.Supp.2d 313, 319 (E.D.N.Y. 2013).
The Second Circuit has clarified that "[a]llegations of fraud are subject to a heightened pleading standard. When alleging fraud, 'a party must state with particularity the circumstances constituting fraud,' Fed. R. Civ. P. 9(b), which we have repeatedly held requires the plaintiff to '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " Nakahata v. New York-Presbyterian Healthcare System, Inc. , 723 F.3d 192, 197-98 (2d Cir. 2013) (quoting Mills v. Polar Molecular Corp. , 12 F.3d 1170, 1175 (2d Cir. 1993) ). Thus, "[a] plaintiff bringing a fraud claim must allege 'the time, place, speaker, and sometimes even the content of the alleged misrepresentation.' " Bertini , 8 F.Supp.3d at 259 (quoting Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano , 03 CV 0015, 2006 WL 1997628, at *5 (S.D.N.Y. July 18, 2006) ); see Meisel v. Grunberg , 651 F.Supp.2d 98, 108 (S.D.N.Y. 2009) ; Walters v. Performant Recovery, Inc. , 124 F.Supp.3d 75, 79 (D. Conn. 2015) (" Rule 9(b) particularity means the who, what, when, where, and how: the first paragraph of any newspaper story.") (internal citation omitted).
Although Plaintiff's Complaint contains numerous generalized allegations of Defendant's purported fraudulent misrepresentations, see Compl. ¶¶ 174-191, these statements fail to adequately "identify the speaker, state where and when the statements were made (or were viewed), and explain why the statements were fraudulent." Nakahata , 723 F.3d at 197-98. For example, although Plaintiff pleads that certain statements on Defendant's webpage and brochure were fraudulent, see *898 Compl. ¶¶ 179-181, these allegations, while perhaps sufficient to satisfy Rule 8(a), lack the particularized facts indicating, at the very least, where and when the statements were made or viewed by Plaintiff or his physicians and why the statements were fraudulent. See Nakahata , 723 F.3d at 197-98 ; Meisel , 651 F.Supp.2d 98, 108 ; Walters , 124 F. Supp. 3d at 79 ; see also Iqbal , 556 U.S. at 662, 129 S.Ct. at 1941 (" Rule 9(b) -which requires particularity when pleading "fraud or mistake" ... does not require courts to credit a complaint's conclusory statements without reference to its factual context.").
In any event, even had the Complaint adequately pleaded the alleged fraudulent misrepresentations in accordance with Rule 9(b), Plaintiff's claim would still fail to pass muster given that Plaintiff has not sufficiently alleged the requisite justifiable reliance on the Defendant's published statements. While the Complaint states that "Defendant knew and expected that recipients of that information would rely on the information[,] that the recipients would take action based upon the information" and that the "misrepresentations or omissions were made to Plaintiff [ ], to Plaintiff's physicians and the medical community, all of whom justifiably and foreseeably relied on those representations or missions," Compl. ¶¶ 186, 190, these allegations are no more than conclusory statements asserted as fact. Indeed, they provide no indication as to whether and, if so, when Plaintiff actually read either the statements on the website and brochure and, if he did, whether he justifiably relied on those specific statements to his detriment. Likewise, the allegations contain no facts setting forth whether Plaintiff's physicians ever reviewed and directly relied upon these same materials prior to making the decision to implant Defendant's Greenfield Filter inside Plaintiff. Without such facts, Plaintiff's fraudulent misrepresentation claim cannot proceed. See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1541 (2d Cir. 1997) (stating that "in order to sustain a claim of fraud, a party must establish, inter alia , justifiable reliance"), cert. denied , 522 U.S. 864, 118 S.Ct. 169, 139 L.Ed. 2d 112 (1997) ; Granite Partners, L.P. v. Bear, Stearns & Co. Inc. , 17 F.Supp.2d 275, 288 (S.D.N.Y. 1998).
Based upon the foregoing analysis, Plaintiff's claim of fraudulent misrepresentation is dismissed.
6. Fraudulent Concealment
"The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." De Sole v. Knoedler Gallery, LLC , 974 F.Supp.2d 274, 314 (S.D.N.Y. 2013) (quoting Woods v. Maytag Co. , 807 F.Supp.2d 112, 124 (E.D.N.Y. 2011) ); see Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A. , 261 F.R.D. 13, 22 (S.D.N.Y. 2009), aff'd sub nom. Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A. , 382 Fed. App'x 107 (2d Cir. 2010). " 'A duty to disclose arises where there is a fiduciary relationship between the parties' or 'where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair.' " Catalano , 167 F.Supp.3d at 559 (quoting Grand Union Supermarkets of the Virgin Islands, Inc. v. Lockhart Realty Inc. , 493 Fed. App'x 248, 252 (3d Cir. 2012) ).
"[L]ike a claim for fraud, a 'claim of fraudulent concealment must be [pleaded] with particularity, in accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b).' " Warren v. John Wiley & Sons, Inc. , 952 F.Supp.2d 610, 621 (S.D.N.Y. 2013) (quoting *899 Hinds County, Miss. v. Wachovia Bank N.A. , 620 F.Supp.2d 499, 520 (S.D.N.Y. 2009) ); see Macias v. Ocwen Loan Servicing LLC , 238 F.Supp.3d 562, 569 (S.D.N.Y. 2017) ; see also Catalano , 167 F. Supp. 3d at 559-60 ("Although Catalano has adequately pleaded BMW's knowledge of the Class Vehicles' alleged defects, his fraudulent concealment claim nonetheless must be dismissed for failure to meet the heightened pleading standards of Rule 9(b), which apply to such a claim."). In addition, where the fraud claim "is premised on concealment so that the plaintiff cannot specify the time and place because no affirmative act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." Woods , 807 F.Supp.2d at 119 ; see Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A. , 244 F.R.D. 204, 213 (S.D.N.Y. 2007) ; Soroof Trading Dev. Co. v. GE Fuel Cell Sys. , LLC , 842 F.Supp.2d 502, 513 (S.D.N.Y. 2012). A plaintiff must also " 'allege facts that give rise to a strong inference of fraudulent intent, which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.' " Catalano , 167 F. Supp. 3d at 560 (quoting Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y. , 375 F.3d 168, 187 (2d Cir. 2004) ); see Law Offices of Oliver Zhou v. Citibank N.A. , No. 15 CIV. 5266, 2017 WL 979062, at *4 (S.D.N.Y. Mar. 13, 2017).
In support of his claim of fraudulent concealment, Plaintiff alleges that "Defendant fraudulently concealed and intentionally omitted [certain] material information," Compl. ¶ 204 (setting forth subparts a-k which consist of alleged omissions), and that Defendant "was under a duty to disclose [that information] to Plaintiff [ ], and Plaintiff's physicians...." Id. ¶ 205. However, Plaintiff has failed to plead, with particularity, "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." Woods , 807 F.Supp.2d at 119 ; see Manhattan Motorcars, Inc. , 244 F.R.D. at 213. Indeed, a review of these allegations reveals a substantive lack of detail as to the exact nature of the alleged omissions, the individual or individuals responsible for the omissions, the context of the omissions and what Defendants obtained through the alleged fraud.
Plaintiff also does not adequately plead that Defendant had a duty to disclose material facts. See De Sole , 974 F.Supp.2d at 314 ; Woods , 807 F.Supp.2d at 124 ; Musalli Factory For Gold & Jewellry, N.A. , 261 F.R.D. at 22. A duty to disclose arises either where "the parties are in a fiduciary or other relationship signifying a heightened level of trust" or where "one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party or one party possesses superior knowledge not readily available to the other and knows that the other is acting on the basis of mistaken knowledge." Naughright v. Weiss , 826 F.Supp.2d 676, 690 (S.D.N.Y. 2011).
The Complaint states only that "Defendant was under a duty to disclose to Plaintiff [ ], and Plaintiff's physicians" and that "Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects." Compl. ¶¶ 205-206. Thus, it appears Plaintiff is attempting to plead the existence of *900 a duty based upon Defendant's superior knowledge. However, to adequately plead the existence of such a duty, Plaintiff must allege facts showing that Defendant was in possession of "(1) [ ]superior knowledge, (2) that is not available to the other party by reasonable inquiry, and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." Naughright , 826 F.Supp.2d at 690 (citing Aetna Cas. & Sur. Co. v. Aniero Concrete Co. , 404 F.3d 566, 582 (2d Cir. 2005) ). Even assuming, arguendo , that the Complaint sufficiently alleges Defendant's superior knowledge, it does not adequately plead facts that the information purportedly withheld was not otherwise available to Plaintiff by reasonable inquiry via his physicians or other external sources of information. Nor are there facts from which an inference can be drawn that Defendant knew Plaintiff was acting on the basis of the mistaken knowledge. See Canpartners Investments IV, LLC v. All. Gaming Corp. , 981 F.Supp. 820, 826 (S.D.N.Y. 1997), ("duty to disclose can [ ] arise where one party possesses superior knowledge, not readily available to the other, and knows that the other party is acting on the basis of mistaken knowledge. ") (emphasis in original); Henneberry v. Sumitomo Corp. of Am. , 532 F.Supp.2d 523, 551 (S.D.N.Y. 2007).
For the foregoing reasons, Plaintiff's claim premised upon a theory of fraudulent concealment is dismissed.
7. Negligent Misrepresentation
In order to state a claim for negligent misrepresentation arising under New York law, a plaintiff must put forth facts sufficient to illustrate that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Hydro Inv'rs, Inc. v. Trafalgar Power Inc. , 227 F.3d 8, 20 (2d Cir. 2000) ; see King v. Crossland Savs. Bank , 111 F.3d 251, 257-58 (2d Cir. 1997) ; Woori Bank v. RBS Sec., Inc. , 910 F.Supp.2d 697, 704 (S.D.N.Y. 2012) ("It is well settled that a claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.") (quoting Mandarin Trading Ltd. , 16 N.Y.3d at 180, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (internal quotation marks omitted) ).
In addition, "[l]ike fraud, negligent misrepresentation claims must comport with Rule 9(b)." Boco v. Argent Mortg. Co., LLC , No. 13-CV-1165, 2014 WL 1312101, at *6 (E.D.N.Y. Mar. 31, 2014) ; See CAC Group, Inc. v. Maxim Group, LLC, 2012 WL 4857518, at *5 (S.D.N.Y. Oct. 10, 2012), aff'd , 523 Fed.Appx. 802 (2d Cir. 2013) (recognizing that "[f]ederal courts considering claims for negligent misrepresentation under ... New York ... law[ ] require such claims be pled with particularity under Rule 9(b)") (citing Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 583 (2d Cir. 2005) ); AVRA Surgical Robotics, Inc. v. Gombert , 41 F.Supp.3d 350, 360 (S.D.N.Y. 2014) ("[A]ny claim for misrepresentation-either fraudulent or negligent-must meet Rule 9 's heightened pleading standards...."); Schwartzco Enterprises LLC v. TMH Management, LLC , 60 F.Supp.3d 331, 350 (E.D.N.Y. 2014) ("[T]he Second Circuit concluded in no uncertain terms, albeit without much in the *901 way of explanation, that claims for negligent misrepresentation under New York law 'must be pled in accordance with the specificity criteria of Rule 9(b) ' ") (quoting Aetna , 404 F.3d at 583 ).
Plaintiff has failed to allege these claims with the specificity required by Rule 9(b). See Nakahata , 723 F.3d at 197-98. Likewise, Plaintiff has not adequately pleaded that a duty existed as a result of a special relationship between themselves and Defendants-a necessary element of negligent misrepresentation. See Mandarin Trading Ltd. v. Wildenstein , 16 N.Y.3d 173, 180, 919 N.Y.S.2d 465, 944 N.E.2d 1104, 1109 (2011) (recognizing that "[i]t is well settled that [a] claim for negligent misrepresentation requires the plaintiff to demonstrate [ ] the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff" and opining that "[a] special relationship may be established by "persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified") (internal citation omitted); Alley Sports Bar, LLC v. SimplexGrinnell, LP , 58 F.Supp.3d 280, 294 (W.D.N.Y. 2014) (finding that "the facts as alleged demonstrate that Plaintiff and Defendant engaged in an ordinary business transaction over the course of three days. This limited course of dealing does not support the existence of a 'special,' 'privity-like,' or 'fiduciary' relationship contemplated by the relevant case law" and concluding that "Plaintiff has not sufficiently pled that 'a special relationship of trust or confidence' existed between the parties. As a result, Plaintiff's claim for negligent misrepresentation must also fail.").
Thus, Plaintiff's claim premised upon a theory of negligent misrepresentation is dismissed.
8. Claims Premised Upon GBL §§ 349 and 350
Section 349 of New York's General Business Law ("GBL") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349(a). Likewise, GBL Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 350. In order to state a claim pursuant to either statutory section, a plaintiff must allege that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." Daniel v. Mondelez Int'l, Inc. , 287 F.Supp.3d 177, 186 (E.D.N.Y. 2018) (citing Orlander v. Staples, Inc. , 802 F.3d 289, 300 (2d Cir. 2015) ); see Spagnola v. Chubb Corp. , 574 F.3d 64, 74 (2d Cir. 2009) ; Saggio v. Select Portfolio Servicing, Inc. , No. 15-CV-04300, 2015 WL 6760132, at *11 (E.D.N.Y. Nov. 5, 2015).
The rationale behind these statutes is to prevent " 'wrongs against the consuming public' and 'halt[ ] consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds[.]' " Saggio , 2015 WL 6760132, at *12 (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A. , 85 N.Y.2d 20, 24-25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995) ). Therefore, "[p]rivate contract disputes, unique to the parties ... [do] not fall within the ambit of the statute[s]." Oswego Laborers' Local 214 Pension Fund , 85 N.Y.2d at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 ; see Saggio , 2015 WL 6760132, at *12 (noting that "[C]ourts routinely find that private, unique transactions are not subject to liability under the statute.");
*902 Genesco Entm't v. Koch , 593 F.Supp. 743, 752 (S.D.N.Y. 1984) ("single shot transaction[s]" are not contemplated by the consumer protection provisions). Conduct meeting the letter and spirit of the statute must at least "have a broad impact on consumers at large." New York Univ. v. Cont'l Ins. Co. , 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290, 662 N.E.2d 763 (1995).
"Claims under GBL sections 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b)." Daniel , 287 F.Supp.3d at 186 ; Greene v. Gerber Prod. Co. , 262 F.Supp.3d 38, 67 (E.D.N.Y. 2017). Nevertheless, "a claim for deceptive business practices under GBL § 349 or for false advertising under GBL § 350 requires [facts illustrating] a causal connection between some injury to plaintiffs and some misrepresentation made by defendants." Small v. Lorillard Tobacco Co. , 252 A.D.2d 1, 15, 679 N.Y.S.2d 593, 604 (1998), aff'd, 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999) (citing Gershon v. Hertz Corp. , 215 A.D.2d 202, 203, 626 N.Y.S.2d 80 (App. Div. 1995) ("Plaintiff's cause of action under General Business Law § 350 for false advertising is legally insufficient absent an allegation that he ... knew of defendant's advertising") ). Therefore, "[t]o properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." Goldemberg , 8 F.Supp.3d at 480 (citing Gale v. Int'l Bus. Machs. Corp., 9 A.D.3d 446, 447, 781 N.Y.S.2d 45 (App. Div. 2004) ); Dash v. Seagate Tech. (U.S.) Holdings, Inc. , 27 F.Supp.3d 357, 361 (E.D.N.Y. 2014). However, there is no requirement that a plaintiff must have relied upon such statements to his detriment since "[j]ustifiable reliance by the plaintiff is not an element of the statutory claim." Koch v. Acker, Merrall & Condit Co. , 18 N.Y.3d 940, 941, 967 N.E.2d 675, 676, 944 N.Y.S.2d 452 (2012).
Assuming, arguendo , that Plaintiff has adequately pleaded the first and second elements, this cause of action fails because Plaintiff has not sufficiently pleaded causation. Although Plaintiff sets forth certain statements contained on Defendant's website and in its product brochure, see Compl. ¶¶ 126-132, 141-147, 177-184, 204, these allegations neither explicitly state nor permit the plausible inference that Plaintiff actually saw these statements prior to making the determination (in conjunction with his physicians) to purchase the Greenfield Filter. See, e.g., id. ¶ 73 ("Defendant's brochure and instructions for us[e], lacked any notable warnings ..."); ¶ 127 ("Defendant's product brochure provides limited information [concerning] possible complications from the use of the IVC filter."); ¶ 128 ("Defendant's warnings on their website ... only list general complications and adverse events but fail to warn and state the actual extent of potential injuries...."); ¶ 141 ("Defendant's relevant webpage pertaining to the IVC filter ... includes a PDF brochure available for public download that assures the Greenfield Filter of its intended functions ... [and] explicitly warrants Defendant's device as having 'Trusted Performance, Timeless Design.' "); ¶ 209 ("Plaintiff and Plaintiff's physicians, prior to the date of Plaintiff's implant surgery, relied on the Defendant's representations about the product...."). None of these allegations provides any indication that Plaintiff ever saw these statements and, to the extent he did, where, when and how Plaintiff came to view either the website or the product brochure. In other words, the relevant factual background to support the above statements is simply lacking. As a result, Plaintiff has failed to sufficiently plead the third element of this claim. See Goldemberg , 8 F.Supp.3d at 480 ; Whalen v. Pfizer, Inc. , 9 Misc. 3d 1124(A), 862 N.Y.S.2d 812 (Sup. Ct. 2005) ("[T]o assert *903 a GBL § 349 claim, a plaintiff must allege that s/he was exposed to the alleged misrepresentations.") (citing Solomon v. Bell Atl. Corp. , 9 A.D.3d 49, 52, 777 N.Y.S.2d 50, 55 (App. Div. 2004) ) (emphasis in original).
Based upon the foregoing analysis, Plaintiff's claims premised upon GBL §§ 349 and 350 are dismissed.
9. Punitive Damages Claim
Under New York law, "a demand for punitive damages does not amount to a separate cause of action for pleading purposes." Mahar v. U.S. Xpress Enterprises, Inc. , 688 F.Supp.2d 95, 111 (N.D.N.Y. 2010) (internal quotation omitted); Alley Sports Bar, LLC , 58 F.Supp.3d at 295 ("[P]unitive damages are a remedy and not a separate cause of action.") (quoting Eldridge v. Rochester City Sch. Dist. , 968 F.Supp.2d 546, 563 (W.D.N.Y. 2013) ). Thus, Plaintiff's separate demand for punitive damages "possesses no viability absent its attachment to a substantive cause of action." Rocanova v. Equitable Life Assurance Soc'y of the U.S. , 83 N.Y.2d 603, 612, 612 N.Y.S.2d 339, 634 N.E.2d 940, 945 (1994) ; see Gilman v. BHC Sec., Inc. , 104 F.3d 1418, 1431 (2d Cir. 1997). Since all of Plaintiff's substantive claims have been dismissed, there is no predicate cause of action that can serve as a viable basis for a punitive damages claim. See Gilman , 104 F.3d at 1431. As a result, Plaintiff's claim for punitive damages is dismissed. See Excelsior Capital LLC v. Allen , No. 11 Civ. 7373, 2012 WL 4471262, at *7 (S.D.N.Y. Sept. 26, 2012) (recognizing that "[p]unitive damages are not a separate cause of action" but instead are generally "available as a remedy in cases of egregious wrongdoing that is punishable as some other type of claim for relief").
10. Leave to Replead
Plaintiff seeks leave to amend the Complaint. Pl.'s Opp'n at 19. "Under Rule 15(a), leave to amend shall be freely given when justice so requires." TechnoMarine SA v. Giftports, Inc. , 758 F.3d 493, 505 (2d Cir. 2014) (internal quotations and citations omitted); see McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). It is "within the sound discretion of the district court to grant or deny leave to amend." McCarthy , 482 F.3d at 200. However, "[a] plaintiff need not be given leave to amend if it fails to specify [ ] to the district court ... how amendment would cure the pleading deficiencies in its complaint." TechnoMarine SA , 758 F.3d at 505-06 ; see, e.g., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG , 752 F.3d 173, 188 n. 71 (2d Cir. 2014) (denying leave to amend where "plaintiffs have identified no additional facts or legal theories-either on appeal or to the District Court-they might assert if given leave to amend"); Hayden v. Cnty. of Nassau , 180 F.3d 42, 53-54 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").
Here, Plaintiff has failed to provide the Court with any indication as to how leave to amend would cure the deficiencies in the Complaint. See Pl.'s Opp'n at 19 (requesting leave to amend but failing to articulate how further amendment would cure deficiencies); TechnoMarine SA , 758 F.3d at 506 ("In its request to amend this complaint below and in its brief here, moreover, TechnoMarine has entirely failed to specify how it could cure its pleading deficiencies. We therefore affirm the district court's denial of Plaintiff's request further to amend the complaint and its decision to grant the motion to dismiss with prejudice."); Gallop v. Cheney , 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would *904 provide additional allegations leading to different result); Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC , 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where plaintiff's "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted); see also Bellikoff v. Eaton Vance Corp. , 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).
For these reasons, Plaintiff's request to amend his Complaint is denied.[4]
IV. CONCLUSION
Based upon the foregoing analysis, Defendant's motion to dismiss the Complaint is GRANTED in its entirety. The Clerk of the Court is directed to close this case.
SO ORDERED.

According to the Complaint, the Inferior Vena Cava "is a vein that returns blood to the heart from the lower extremities" and that certain individuals can experience "blood clots or thrombi [that] travel from the blood vessels in the leg and pelvis, through the IVC and into the lungs, causing a pulmonary embolism ("PE")." In addition, "these thrombi also can develop in the deep leg veins and are referred to a[s] deep vein thrombosis ("DVT")." At risk individuals are generally prescribed anticoagulants but for "individuals who are at a high risk for PE and/or DVT or for whom anticoagulants are contraindicated, doctors may recommend implantation of an IVC filter to reduce the risk of a thrombotic event." An IVC filter is a device which is "designed to prevent blood clots from traveling from the lower extremities to the hear and lungs. It is inserted in the IVC and works by trapping and filtering clots that form in the lower portions of the body. Compl. ¶¶ 29-32; see ¶ 36 ("The Greenfield Filter, which was designed, manufactured, distributed, marketed, and/or sold by the Defendant "is a permanently implanted medical device designed to prevent pulmonary embolism and DVT, and is designed to protect from perforation of the vena cava wall, and to protect from filter migration.").

Plaintiff concedes that the brochure "might not be the same brochure given to Plaintiff at the time of his implant...." Compl. ¶ 142.

"A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains. N.Y. U.C.C. § 2-315 (Official Comment).

In any event, Plaintiff's request to amend, contained solely in his opposition memorandum, is procedurally defective since "a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15." Koehler v. Metro. Transportation Auth. , 214 F.Supp.3d 171, 178 (E.D.N.Y. 2016) ; Hatteras Enterprises Inc. v. Forsythe Cosmetic Grp., Ltd. , No. 15 CV 05887, 2018 WL 1935984, at *13 (E.D.N.Y. Apr. 23, 2018) (same); see also Malin v. XL Capital, Ltd. , 312 Fed. App'x 400, 402-03 (2d Cir. 2009) ("[W]e have not required district courts to provide[ ] detailed explanations when denying cursory or boilerplate requests for [requests to amend a complaint], made solely in a memorandum in opposition to a motion to dismiss)." Thus, Plaintiff's request would be denied on this independent ground.